476 P.2d 519

Chester A. **CHENOWETH**, Appellant,

v.

**FINANCIAL INDEMNITY COMPANY**,
Appellee.

No. 1 CA–CIV 1081.

Court of Appeals of Arizona,
Division 1.

Nov. 16, 1970.

Richmond, Ajamie, Fay & Warner by Jack C. Warner, Phoenix, for appellant.

Gust, Rosenfeld & Divelbess by Robert T. Murphy, Phoenix, for appellee.

KRUCKER, Judge.

Plaintiff, Chester Chenoweth, sued defendant, Financial Indemnity Company, for its bad faith failure to accept a settlement offer in a personal injury action. The trial court granted defendant's motion for summary judgment and plaintiff appeals.

The history of this matter deserves attention. In 1960, one Oscar Sandoval, after running a red light, collided with a car in which plaintiff Chenoweth was a passenger. Chenoweth sued Sandoval. A default judgment for $35,000 was awarded Chenoweth because Sandoval had failed to notify his insurance company, Financial Indemnity, to appear. Financial had written Sandoval coverage in a $10,000 limit. Subsequent to the judgment, Chenoweth garnished Financial. Financial answered no indebtedness by reason of defendant's failure to notify its insured. Chenoweth then filed a tender of issue. The trial court granted summary judgment to Chenoweth for $5,000, that being the security required by the Arizona Financial Security Act. Pending appeal to the Supreme Court, Sandoval filed bankruptcy and Chenoweth offered to settle his $35,000 claim for $9,500. The insurance company rejected the offer. Shortly thereafter, the Arizona Supreme Court reversed the trial court, holding Financial had no policy defense to its liability under the Financial Responsibility laws and was liable for Sandoval's debt to the limits of the $10,000 policy. Sandoval v. Chenoweth, 102 Ariz. 241, 428 P.2d 98 (1967).

Chenoweth received $10,000 from Financial. He then purchased, from Sandoval's bankrupt estate, Sandoval's claim against Financial for failure to settle post-judgment within policy limits. Chenoweth therefore prosecuted the instant action both as an assignee and in his own right. We examine the record to determine whether the trial court's granting of a motion for summary judgment was proper.

Plaintiff Chenoweth's complaint contains two claims for relief. First, he alleged Financial's bad faith refusal to settle with-

in policy limits and its pursuance of an appeal could only benefit itself and thus caused his assignor, Sandoval, to suffer bankruptcy, attorney's fees, and damage to his credit and financial reputation. Second, plaintiff alleged Financial's bad faith refusal to settle caused Chenoweth damage in attorney's fees and garnishment costs.

Defendant Financial answered that it acted in good faith in refusing to settle, convinced that it had an absolute defense against its own insured, Sandoval. Likewise, it contends the question was one of law for the court.

In recent years a voluminous body of cases have been decided on the question of when and whether an insurance company is liable for the damages assessed its insured beyond policy limits. Generally speaking, insurance policies reserve the right solely to the insurer to settle and defend claims. Consequently, there arises a conflict of interest between the insurer and the insured when the action against the insured is for an amount in excess of the policy coverage and there is a settlement offer within the coverage limit. The insured wishes to have his liability within coverage limits because he has paid for that coverage and a larger judgment would make him individually out-of-pocket. The insurer hopes to pay as little of the coverage limit as possible, knowing in any event it cannot be responsible for more than it has already been paid to assume.

In order to balance the inequities of the situation where conflicting interests are being contractually controlled by the absolute power of only one of the conflicting interests, courts have required that the insurer be bound to give some fair consideration to the insured's interest and a failure to do so will make him liable to his insured for any judgment in excess of the policy coverage. In Arizona, the following rule applies:

"* * * when the insurer is defending litigation against the insured, employs attorneys to represent the interests of both and has sole power and

opportunity to make a settlement which would result in the protection of the insured against excess liability, common honesty demands that it not be moved by partiality to itself nor be required to give the interests of the insured preferential consideration. A violator of this rule of equality of consideration cannot be said to have acted in good faith. [Citation] The enunciation of the rule is not difficult but its application is troublesome. It is a matter of consideration of comparative hazards." Farmers Insurance Exchange v. Henderson, 82 Ariz. 335, at 338–339, 313 P.2d 404, at 406 (1957).

The "good faith" test, as it has come to be known, has not been uniformly adopted by all jurisdictions, but where applied, courts have looked to similar factors to determine the insurer's good faith. For example, proof can be presented as to the following: (1) the evidence of plaintiff's claim, (2) the insurer's failure to properly investigate the claim, (3) the insurer's rejection of its own legal counsel urging settlement, (4) the failure of the insurer to inform the insured of the offer, and (5) the attempt of the insurer to get the insured to contribute to the settlement, etc. For the many cases decided under this test see, Annot., 40 A.L.R.2d 168, and Later Case Services.

In the instant case, the settlement offered and rejected occurred after judgment. A somewhat more stringent rule has been applied in such cases. Both the annotation cited and 8 Blashfield, Automobile Law and Practice § 343.4 (3rd Ed. 1966), with the cases cited therein, agree the rule is as follows:

"A greater duty rests on an insurance company, after a verdict in excess of the limits of the policy has been returned than exists before such event, to determine whether the litigation should be settled when it can be settled within the policy limits; and, where a verdict in excess of the policy limits has been returned against the insured, and a set-

tlement is offered within the policy limits, in order for the insurance company to insist on an appeal in good faith, the facts for reversal must be very strong and the chances of success correspondingly greater than chances of failure." We find no express Arizona case on this point, but the logic and apparent agreement as to this rule is compelling.

■ Given this standard, the law also seems clear that the issue of "good faith" is a question for the jury, unless reasonable men could not differ. Seventh Decennial Digest, Insurance § 514.5(3). Plaintiff herein attempts in his response to defendant's motion for summary judgment to lay out the factors to be considered in evaluating defendant's bad faith, taking verbatim many of those enumerated earlier in this opinion. Primarily, plaintiff contends defendant's "lack of notice" defense was invalid as Financial's conduct estopped it from asserting it. He also contends the disparity in the plaintiff's potential liability vis-a-vis defendant's potential liability was not considered.

■ A careful reading of the plaintiff's contended factual issues reveals a lack of complex factual dispute. However, we believe in light of the high duty placed on the insurance carrier in post-judgment cases, the fact of a $35,000 judgment and a $9,500 offer raises the issue of bad faith for a jury. We believe this is true, especially in light of counsel's concession at oral argument that Financial rejected the settlement offer without a counter-offer or probably *any* consideration of Sandoval's position because Financial considered itself, due to the lack of notice, Sandoval's adversary. We believe the insured has the right to at least have his interests taken into consideration.

Judgment reversed.

HOWARD, C. J., and HATHAWAY, J., concur.

Note: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.