IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| RICHARD ACOSTA, | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | 2 CA-CV 2006-0116 |
| | ) | DEPARTMENT A |
| v. | ) | |
| | ) | **O P I N I O N** |
| PHOENIX INDEMNITY INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20050642

Honorable John E. Davis, Judge

REVERSED AND REMANDED

---

Law Offices of John L. Tully, P.C.
  By John L. Tully                                                                        Tucson
                                                    Attorney for Plaintiff/Appellant

Allen & Lewis, PLC
  By Lynn M. Allen and Robert K. Lewis                                        Scottsdale
                                                  Attorneys for Defendant/Appellee

---

V Á S Q U E Z, Judge.

¶1        Appellant Richard Acosta appeals from the trial court's grant of summary judgment in favor of appellee Phoenix Indemnity Insurance Company on his third-party bad faith claim.  For the following reasons, we reverse the judgment and remand this matter for proceedings consistent with this decision.

### Standard of Review

¶2        We review a trial court's grant of summary judgment de novo.  *Andrews v. Blake*, 205 Ariz. 236, ¶ 12, 69 P.3d 7, 11 (2003).  We will affirm a summary judgment only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Id.* ¶ 13.  And we view the facts in the light most favorable to the party against whom summary judgment was entered.  *Ariz. Prop. & Cas. Ins. Guar. Fund v. Martin*, 210 Ariz. 478, ¶ 2, 113 P.3d 701, 701-02 (App. 2005).

### Facts and Procedural History

**A.  Personal injury action**

¶3        The following facts are undisputed.  In January 2001, Acosta was a passenger in a car being driven by Alonzo Carranza when Carranza lost control of the vehicle and crashed it.  Acosta was severely injured.  Carranza's aunt, Guadalupe Lara, owned the vehicle, and Carranza admitted that he had lacked her permission to drive the car.  Acosta's girlfriend reported the accident to Phoenix Indemnity, Lara's automobile insurance company, approximately one week after the accident.  In April 2001, Acosta filed a negligence lawsuit against Carranza and Lara.  Phoenix Indemnity retained an attorney to

2

defend Lara under a reservation of rights. However, the attorney filed an answer on behalf of both Lara and Carranza.[1]

¶4　　　　On June 12, 2001, Carranza filed a petition for bankruptcy in federal court. Several days later, on June 20, Acosta's attorney sent a letter to the attorney representing Carranza, giving Phoenix Indemnity ten days to pay Acosta Lara's policy limit of $15,000, presumably in exchange for his dismissing his lawsuit. The attorney responded with a letter declining to accept the settlement offer. In October 2001, Carranza's debts were discharged by the bankruptcy court.

¶5　　　　Within days of the bankruptcy discharge, Phoenix Indemnity offered to settle Acosta's claim against Lara for the policy limit of $15,000, but confirmed its denial of coverage for Carranza. In January 2002, Phoenix Indemnity conceded its policy covered Carranza and again offered to pay the policy limit. Acosta rejected these offers.

¶6　　　　In December 2004, Acosta, Carranza and his wife, and Phoenix Indemnity entered into a settlement agreement in the negligence action in which the parties agreed that Acosta would file an action against Phoenix Indemnity for bad faith "as though [Acosta] had obtained a judgment against [Carranza] at a trial on the merits . . . and . . . after the judgment became final . . . , [Carranza] assigned [his] claims for bad faith against Phoenix Indemnity to [Acosta]." The parties further agreed that Acosta's maximum recovery against Phoenix

---

[1]Lara was apparently eventually dismissed from the lawsuit.

Indemnity in the bad faith action would be $400,000 and that Acosta would receive nothing if he did not prevail in the bad faith action.

**B. Bad faith action**

¶7       Acosta filed his bad faith complaint in February 2005, asserting that Phoenix Indemnity had breached the implied covenant of good faith and fair dealing in Lara's automobile liability insurance policy by failing to settle his personal injury claim against Carranza and paying Acosta the policy limit of $15,000. Acosta later filed a motion for partial summary judgment on two affirmative defenses Phoenix Indemnity had raised in its answer. Phoenix Indemnity filed a cross-motion for summary judgment, asserting that it could not have accepted Acosta's June 20, 2001, offer to settle his claim because Carranza had filed a bankruptcy petition. Phoenix Indemnity asserted that Carranza's filing of the bankruptcy petition had stayed any pending actions in which he was involved. Phoenix Indemnity also argued that the settlement offer was not valid because the bankruptcy trustee was not a party to it. Thus, Phoenix Indemnity argued, because "it was a legal impossibility for [it] to settle the matter," it could not have acted in bad faith as a matter of law.

¶8       In response, Acosta argued Carranza's pending bankruptcy proceeding did not affect whether Phoenix Indemnity could have accepted his June 20, 2001, offer to settle his action because the insurance proceeds were not a part of Carranza's bankruptcy estate. Alternatively, Acosta argued that, even if bankruptcy court approval was required, the

4

settlement offer was nonetheless valid because Phoenix Indemnity could have conditionally accepted his offer pending that approval.

¶9 Acosta further argued that summary judgment in favor of Phoenix Indemnity was precluded because the "factual basis" of the motion—that the June 20, 2001, offer had been the only settlement offer—was incorrect and that Phoenix Indemnity could have settled the personal injury action before Carranza had filed his bankruptcy petition on June 12, 2001. Acosta further asserted that Phoenix Indemnity had borne an affirmative duty "under the circumstances of this case to initiate and pursue settlement negotiations designed to settle the claim within the policy limit even in the absence of an offer from the claimant."

¶10 In response to the final two related arguments, Phoenix Indemnity contended that, before June 12, 2001, "there was no good reason" for it to accept or solicit a settlement offer because its position at the time had been that Carranza was not covered by the insurance policy. Accordingly, Phoenix Indemnity argued that, because "[t]here is no evidence in the record that a reasonable claims professional would have paid this claim," there was, as a matter of law, no bad faith on its part for failing to settle the negligence action.

¶11 After a hearing, the trial court denied Acosta's motion and granted Phoenix Indemnity's cross-motion. The court found that Phoenix Indemnity had had no duty to solicit a settlement before Carranza filed his petition for bankruptcy because it had "initially questioned whether there was coverage in this case" and because neither Carranza nor Lara,

5

the owner of the policy, had sought coverage of the claim from Phoenix Indemnity. The court further found that the bankruptcy filing had impeded Phoenix Indemnity's ability to settle Acosta's lawsuit. The trial court concluded that, as a matter of law, Phoenix Indemnity had not acted in bad faith in failing to settle Acosta's lawsuit. This appeal followed.

## Discussion

### A. Principles of bad faith law

¶12 "[A]n insurance company owes its insured a duty of good faith in deciding whether to accept or reject settlement offers." *Hartford Accident & Indem. Co. v. Aetna Cas. & Sur. Co.*, 164 Ariz. 286, 289, 792 P.2d 749, 752 (1990). This duty stems from the implied covenant of good faith and fair dealing that arises from the underlying contractual relationship. *See id.* at 291, 792 P.2d at 754; *Taylor v. State Farm Mut. Auto. Ins. Co.*, 185 Ariz. 174, 176, 913 P.2d 1092, 1094 (1996).

¶13 The tort of bad faith has two elements: first, "that the insurer acted unreasonably toward its insured" and, second, "that the insurer acted knowing that it was acting unreasonably or acted with such reckless disregard that such knowledge may be imputed to it." *Miel v. State Farm Mut. Auto. Ins. Co.*, 185 Ariz. 104, 110, 912 P.2d 1333, 1339 (App. 1995). When an insurer allegedly acts in bad faith in its duty to indemnify or protect its insured against liability to third parties, the action is classified as a third-party claim. *Clearwater v. State Farm Mut. Auto. Ins. Co.*, 164 Ariz. 256, 258, 792 P.2d 719,

6

721 (1990). Such a claim can be brought either by the insured or the insured's assignee, *id.*, as is the case here. And, in the third-party context, the duty of good faith requires an insurance company to give "equal consideration to the protection of the insured's as well as its own interests." *Hartford*, 164 Ariz. at 289, 792 P.2d at 752; *see also Clearwater*, 164 Ariz. at 260, 792 P.2d at 723.

**B. Failure to settle before June 12, 2001**

¶14 We first address Acosta's argument that Phoenix Indemnity was not entitled to summary judgment on the issue of whether it had acted in bad faith in failing to settle his claim for the $15,000 insurance coverage limit when it had the opportunity to do so before Carranza filed his bankruptcy petition. The trial court expressly found that Phoenix Indemnity had not acted in bad faith when it did not offer to settle Acosta's lawsuit before the petition was filed because it was questionable whether Carranza was covered under the insurance policy. The trial court implicitly also found that Phoenix Indemnity had not acted in bad faith in refusing to accept Acosta's settlement offer during the same period.

¶15 Acosta argues the evidence shows Phoenix Indemnity acted in bad faith. Acosta asserts that he presented uncontroverted evidence, in the form of an affidavit by his negligence action attorney, that his attorney had told Phoenix Indemnity Acosta was willing to settle for the $15,000 limit before June 12, 2001. Because we view the facts in the light most favorable to Acosta, *see Martin*, 210 Ariz. 478, ¶ 2, 113 P.3d at 701-02, we assume Acosta's assertion is true. Thus, we must determine whether, in refusing this prebankruptcy

7

settlement offer from Acosta, Phoenix Indemnity failed to give equal consideration to its insured's interests as well as its own and, consequently, acted in bad faith. *See Clearwater*, 164 Ariz. at 260, 792 P.2d at 723.

¶16 An insurer must weigh a number of factors, including the strength of the third party's claim and the "financial risk to the insured in the event of a judgment in excess of the policy limits." *Id.* "'In determining whether an insurer has given consideration to the interests of the insured, the test is whether a prudent insurer without policy limits would have accepted the settlement offer.'" *Id., quoting Crisci v. Sec. Ins. Co.*, 426 P.2d 173 (Cal. 1967). The insurer must evaluate a claim objectively and "as though it alone would be responsible for the payment of any judgment rendered." *Gen. Accident Fire & Life Assurance Corp. v. Little*, 103 Ariz. 435, 442, 443 P.2d 690, 697 (1968). Acosta argues that, under this test, Phoenix Indemnity should have accepted his offer to settle within the policy limit. He contends the evidence shows a high potential that he would have been successful in his negligence action and a high probability he would have recovered damages in excess of the policy limit.

¶17 The evidence upon which Acosta relies consists of notations in Phoenix Indemnity's claim file that his injuries were "extensive" and "horrific," that it had been notified of a hospital's lien on any insurance proceeds in an amount greater than twice the policy limit of $15,000, and that the company had obtained a copy of the police report of the accident, which noted that Carranza had been driving at a speed "too fast for conditions"

8

and "had been drinking." This evidence bears on the issues of Acosta's chances of successfully proving Carranza's negligence and his likelihood of recovering damages in excess of the policy limit because of the severity of his injuries. We agree a trier of fact could find that a prudent insurer evaluating this evidence as though it alone would have been responsible for paying any judgment would have accepted Acosta's $15,000 settlement offer. Thus, a trier of fact also could find that Phoenix Indemnity did not give equal consideration to its insured's interests as well as its own in refusing Acosta's settlement offer. *See, e.g., id.* at 443, 443 P.2d at 698 (finding insurer did not give equal consideration to insured because evidence showed it believed it had high probability of losing lawsuit and recognized likelihood of excess exposure).

¶18        Our inquiry does not end here, however. Phoenix Indemnity asserts that it did not reject a reasonable settlement offer prior to Carranza's bankruptcy filing, noting that "there was a substantial coverage issue involving non-permissive use." Indeed, Carranza admitted soon after the accident occurred that he had not had permission to drive Lara's vehicle, and this admission was never contradicted by Carranza or anyone else. However, Phoenix Indemnity later conceded its policy covered Carranza. Based on that fact, Acosta argues that, if an insurer rejects a policy limit offer, "and it is later determined that the policy does provide coverage, the [insurer]'s liability for bad faith failure to settle is not excused by its earlier good faith belief in a lack of coverage."

**¶19** Acosta cites *State Farm Automobile Insurance Co. v. Civil Service Employees Insurance Co.*, 19 Ariz. App. 594, 509 P.2d 725 (1973), and further argues that, "[w]hen an insurer refuses to consider settlement opportunities because the company does not believe that the policy provides coverage for the claim, it acts at its peril even if the company has an 'honest though erroneous' belief that the policy does not provide coverage." This is a correct statement of the law. *See Parsons v. Cont'l Nat'l Am. Group*, 113 Ariz. 223, 229, 550 P.2d 94, 100 (1976). However, in *State Farm*, Division One of this court found that, although the insurer was liable to the extent of the policy limit, it was nevertheless not liable for any amounts beyond the policy limit because it had justifiably relied on its insured's factual and legal position in failing to consider a settlement offer. 19 Ariz. App. at 603-04, 509 P.2d at 734-35.

**¶20** The insureds in *State Farm* had initially maintained a legal and factual position in a personal injury action that led State Farm to erroneously deny coverage for the claim. *Id*. at 597, 603, 509 P.2d at 728, 734. After the insureds assigned their claim to the injured party, who filed a third-party bad faith action against State Farm, the insureds changed their statements in a manner consistent with there being coverage for the claim. *Id*. at 598-99, 509 P.2d at 729-30. State Farm argued that the assignee should be estopped from benefiting from the insureds' change in position. *Id*. at 599, 509 P.2d at 730. Division One stated the elements of equitable estoppel as: 1) one party acts inconsistently with a position it later relies upon, 2) another party relies upon the initial actions, and 3) injury

would result if the first party were allowed to repudiate its prior conduct. *Id*. at 603, 509 P.2d at 734. The court first determined that estoppel did not apply to State Farm's liability to the extent of its policy limit. *Id*. at 600, 509 P.2d at 731. The court concluded that State Farm was obligated to pay the amounts within the policy limit because of its "contractual policy undertaking" and not as a result of State Farm's reliance on statements made by the insureds. *Id.* at 601, 509 P.2d at 732.

¶21 But the court found the elements of estoppel had been met in determining State Farm's liability beyond the policy limit. The insureds would not have been permitted to change their legal position after State Farm had relied on their earlier statements. *Id*. at 603-04, 509 P.2d at 734-35. And, because their assignee "ha[d] no greater rights" than the insureds had, he was likewise estopped from asserting a legal position inconsistent with the one the insureds had originally made. *Id*. at 604, 509 P.2d at 735. Thus, the court held State Farm was not liable for damages in excess of the policy limit.

¶22 It appears from the trial court record that Lara and Carranza never contradicted Carranza's statement that he had not been given permission to use the vehicle. This would seem to support Phoenix Indemnity's implicit assertion that it reasonably relied on that position in denying coverage and rejecting Acosta's settlement offer. However, Phoenix Indemnity does not dispute that, at some point, it conceded coverage for both Lara and Carranza and offered to settle Acosta's claim for the policy limit. One of the critical factors the court in *State Farm* considered when deciding the issue of liability beyond the policy

11

limits was the insureds' statements, and the insurer's reasonable reliance on those statements, in denying coverage and refusing to settle. We agree with that analysis.

¶23 Turning to this case, at oral argument in this court, counsel for Phoenix Indemnity acknowledged that no evidence had been presented in the trial court on exactly when Phoenix Indemnity had changed its position or, just as importantly, why it had changed its position on coverage. On the record before us, we have no way of deciding the estoppel issue. We therefore remand this case to the trial court to make that determination. If the evidence shows Phoenix Indemnity changed its position and conceded coverage because it relied on new information from its insureds or as a result of further investigation of the facts about Carranza's use of the vehicle, then equitable estoppel may apply. If, on the other hand, Phoenix Indemnity did not rely on new information or additional facts, but instead, simply changed its position for business or other considerations, then equitable estoppel will not apply.[2]

## C. Failure to accept June 20, 2001, settlement offer

¶24 Phoenix Indemnity further contends it was legally impossible for it to settle Acosta's claim while the automatic bankruptcy stay was in effect without approval of the bankruptcy court and the bankruptcy trustee's involvement in the settlement offer. The argument may be rendered moot by the trial court's determination of the estoppel issue. But

---

[2]Because we are remanding the case for a determination of the equitable estoppel issue, we do not address Acosta's due process argument that the trial court improperly allowed Phoenix Indemnity to raise a new argument at the summary judgment hearing.

because we are remanding the case, and to avoid any potential confusion of issues below, we address the merits of Phoenix Indemnity's argument.

¶25    The relevant portion of the Bankruptcy Code, 11 U.S.C.A. § 362(a), provides that, with certain exceptions not applicable here, the filing of a bankruptcy petition operates as a stay of

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

¶26    It appears that, under § 362(a), Acosta's negligence action against Carranza would have been automatically stayed. *See, e.g., Stallings v. Spring Meadows Apartment Complex Ltd.*, 185 Ariz. 156, 157, 913 P.2d 496, 497 (1996) (defendant's bankruptcy petition filing triggered automatic stay of pending personal injury action). Acosta had offered to settle his negligence action against Carranza in exchange for payment of the insurance coverage limit by Phoenix Indemnity. Thus, some involvement of the bankruptcy court to lift the stay may have been required in order for the settlement to be effective.

¶27    Phoenix Indemnity further asserts that the settlement offer itself was invalid because the bankruptcy court and trustee did not approve it, relying on *Coe v. State Farm Mutual Automobile Insurance Co.*, 136 Cal. Rptr. 331 (Ct. App. 1977). This reliance is misplaced because *Coe* is inapposite. There, the court found that a settlement "offer" was deficient as a matter of law because it did not provide for the participation and consent of

13

the State Compensation Insurance Fund. *Id.* at 337. Involvement of the fund was required by law because the fund was entitled to reimbursement for benefits it had paid the plaintiff because he had been injured while on the job. *Id. Coe* is limited to its unique workers' compensation context, however, and we find it unpersuasive here in the context of bankruptcy law.

¶28 Rather, we find the Ninth Circuit case of *Gibbs v. State Farm Mutual Insurance Co.*, 544 F.2d 423 (9th Cir. 1976), upon which Acosta relies, persuasive and helpful in this context. In that case, the court rejected the insurer's argument that there had not been a meaningful settlement opportunity because there had not been a court ruling authorizing the compromise or release of the injured minor's cause of action. *Id.* at 427. The court stated: "This argument is naive. State Farm could have agreed to pay [the minor's] expenses to the limit of the policy and then have sought court approval before making any payments. This would have allowed it to conform to the good faith requirement of California case law." *Id.* at 427-28; *see also Allen v. Allstate Ins. Co.*, 656 F.2d 487, 490 (9th Cir. 1981) ("An insurer's duty of good faith would be trifling if it did not require an insurer to explore the details of a settlement offer that could prove extremely beneficial to its insured.").

¶29 A similar process could have been followed here. Even if bankruptcy court approval and trustee involvement would ultimately be required for the settlement to become effective, Phoenix Indemnity has failed to show that the June 20, 2001, offer did not afford

14

it a meaningful opportunity to settle the case. The offer's sufficiency under bankruptcy code law is irrelevant. Thus, as Phoenix Indemnity has failed to demonstrate its entitlement to judgment as a matter of law on this basis, summary judgment on this ground was inappropriate. *See Andrews v. Blake*, 205 Ariz. 236, ¶ 13, 69 P.3d 7, 11 (2003) (summary judgment appropriate only if no genuine issues of material fact exist and moving party entitled to judgment as a matter of law).

**¶30** The trial court's grant of summary judgment in favor of Phoenix Indemnity is reversed, and this matter is remanded for further proceedings consistent with this decision.

_____
GARYE L. VÁSQUEZ, Judge

CONCURRING:

_____
JOHN PELANDER, Chief Judge

_____
JOSEPH W. HOWARD, Presiding Judge