443 P.2d 690

**GENERAL ACCIDENT FIRE & LIFE AS-
SURANCE CORPORATION,
Ltd., Appellant,**

v.

**Irene Bernice LITTLE, Administratrix,
Appellee.**

No. 8466.

Supreme Court of Arizona.
In Banc.

July 16, 1968.

**436**

John E. Madden (deceased) and John S. Schaper, Phoenix, for appellant.

Stevens & Leibow, and John J. Dickinson, Phoenix, for appellee.

UDALL, Vice Chief Justice:

The appellee, Irene Bernice Little, brought this action as the assignee of Elza A. Allen and Claudie Beatrice Allen, who were the named insureds under an automobile public liability policy carried with the appellant, hereinafter referred to as General.

On October 22, 1959 Mrs. Allen was involved in an accident which resulted in the death of Mrs. Little's seventeen-year-old son. Appellee thereafter brought suit against the Allens, during the pendency of which General was offered an opportunity to settle for $4,000.00. This offer was rejected and a jury ultimately returned a verdict in favor of Mrs. Little, administratrix, in amount of $17,500.00. Thereafter General paid its policy limits, $5,000, and accrued costs on the judgment. With no execution being levied or any other steps being taken to collect the balance of the judgment, Mrs. Little accepted from the Allens the following assignment:

> "WE, ELZ A. ALLEN and CLAUDIE BEATRICE ALLEN, for value received, hereby assign to IRENE BERNICE LITTLE, Administratrix of the estate of JIMMY ANDREW HAVNER, deceased, her executors, administrators and assigns, all our right, title and interest in our claims, rights of action and causes of action against The General Accident Fire and Life Assurance Corporation, Ltd., and Potomac Insurance Group doing business as The General Accident Group, based on the negligence, breach of contract and bad faith of said Company in failing to settle cause No. 111201, Superior Court of Maricopa County, State of Arizona, within the policy limits of our liability policy with said company and we authorize IRENE BERNICE LITTLE, Administratrix of JIMMY ANDREW HAVNER, deceased, her executors, administrators and assigns, to commence action on, prosecute and collect thereon, and take all legal or other measures deemed proper or necessary, with the same force and effect as we could do.

"This assignment is made *to secure the payment of a judgment rendered against us in cause No. 111201, Superior Court of Maricopa County, Arizona, the payment of which obligation will render this assignment void; otherwise, to be of full force and effect*." [emphasis added]

Armed with this assignment Mrs. Little instituted the present action. The complaint herein alleged the death of Jimmy Havner, Mrs. Little's son; the prior suit and judgment, the issuance of a liability policy by General, the defense of the prior action by General, the offer and refusal of settlement within policy limits and further alleged that such refusal was based on the bad faith and negligence of General resulting in damage to the Allens in amount of $12,500 (amended complaint); and, finally, the assignment to Mrs. Little was alleged.

General defended on the basis that the complaint failed to state a claim on which relief could be granted. General admitted the accident, the issuance of the policy and the defense of the claim under the terms of the policy; but denied that the accident and death were caused by any negligence of Claudie, or that General had been negligent or had acted in bad faith in refusing to accept the offers of settlement and further denied that the Allens had sustained any damage or that any claim of the Allens had been assigned to Mrs. Little. As to the latter denial the trial court entered a pre-trial order "that the cause of action asserted by plaintiff is properly in the plaintiff by virtue of the assignment in question and the trial of said cause shall proceed on the merits."

Trial resulted in a jury verdict of $12,500. General's motions objecting to the form of judgment entered thereon (which provided for interest), for a new trial, and for judgment notwithstanding the verdict were all denied. This appeal follows.

This is only the second opportunity this court has had to review an "excess liability" case. As we noted in the earlier case the "law in this regard is of comparatively recent development and the cases are not entirely harmonious," Farmers Insurance Exchange v. Henderson, 82 Ariz. 335, 313 P.2d 404. *Farmers* is authority for the proposition that an insurer must give equal consideration to the interests of an insured in determining whether to settle or defend a claim, and that a failure to do so does not constitute good faith.

General has no quarrel with the *Farmers* holding but contends in the instant case that the assignment of an insured's excess liability claim, as collateral security, does not make the judgment creditor the real party in interest as required by Rule 17(a), Rules of Civil Procedure, 16 A.R.S.[1] General cites from Mosher v. Hiner, 62 Ariz. 110, 154 P. 2d 372, language taken from the early case of Curry v. County of Gila, 6 Ariz. 48, 53 P. 4, the following:

"Any person interested in the subject-matter of the suit who has a personal interest in the judgment is a 'real party in interest,' and unless joined in the action he cannot be bound by the judgment, and for this very reason the law says that he shall be made a party. * * *"

Though the question is not at all settled, the appellant is willing to concede that an excess liability claim may be the subject of an absolute assignment or be transferred by operation of law, Comunale v. Traders & General Insurance Co., 50 Cal.2d 654, 328 P. 2d 198, 68 A.L.R.2d 883; Brown v. Guarantee Insurance Co., 155 Cal.App.2d 679, 319

---

1. At the time this action was filed Rule 17(a), Rules of Civil Procedure, read as follows:

    Rule 17. Parties plaintiff and defendant; capacity

    17(a) *Real party in interest.* Every action shall be prosecuted in the name of the real party in interest, but an executor, administrator, guardian, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought. When a statute of the state so provides, an action for the use or benefit of another shall be brought in the name of the state."

P.2d 69, 66 A.L.R.2d 1202. General argues however that the assignment here involves no release or discharge of the liability of the insured for the payment of the judgment; that Mrs. Little could immediately levy execution against the Allens' property, and that by the terms of the assignment the Allens are in no way absolved of their responsibility to pay the judgment.

■ Under these circumstances General points out that generally a judgment creditor has no *direct* right to maintain an excess liability suit for any bad faith in an insurer's dealings with its policyholder. Sturgis v. Canal Insurance Co., Fla., 122 So.2d 313; Chittick v. State Farm Mutual Automobile Ins. Co., D.C., 170 F.Supp. 276. Nor can a judgment creditor institute garnishment proceedings based on bad faith of the insurer, Francis v. Newton, 75 Ga. App. 341, 43 S.E.2d 282; Paul v. Kirkendall, 6 Utah 2d 256, 311 P.2d 376. The basic reasoning behind such holdings is well stated by Professor Keeton in his article, Liability Insurance and Responsibility for Settlement, 67 Harv.Law Review 1136, 1176:

> " * * * The excess liability of company arises out of the relationship between insured and company. Claimant is a stranger to that relationship. Not only is company without any duty to claimant to accept claimant's reasonable settlement offer, but also, if there is a sizeable disparity between the settlement offer and the amount of the judgment obtained in the trial which follows refusal of the offer, claimant is benefitted rather than harmed by company's refusal to set-

tle. It would therefore be anomalous to permit claimant to recover *directly* against company in his own right * * *." (Our emphasis)

■ We find no merit in appellant's contentions. It has long been the law in Arizona, and the law in most if not all jurisdictions that an assignee of a chose in action may maintain suit thereon in his own name, United Verde Extension Mining Co. v. Ralston, 37 Ariz. 554, 296 P. 262. He need not be the full party in interest, Mosher v. Hiner, supra at 62 Ariz. 112, 154 P.2d 374; and the debtor or alleged obligor is not prejudiced as he may assert his defenses as fully against the assignee as he could the original claimant, A.R.S. § 44–144. Nor is the fact that the assignment is given as collateral security on the original tort judgment, if such be the case, of any consequence to General, for payment to the assignee of any judgment rendered in this cause will completely discharge General of further obligation and constitute a complete bar to any possible future action the Allens might institute against it.

■ It would seem to this court that if the company seriously felt such would not be the case, they would have moved to have the Allens joined as additional parties. In addition to Comunale v. Traders & General Insurance Co., supra and Brown v. Guarantee Insurance Co., supra, as to the assignability or partial assignability of an excess liability claim see the very recent cases of Atlantic City v. American Casualty Insurance Co., D.C., 254 F.Supp. 396 and Gray v. Nationwide Mutual Ins. Co., 422 Pa. 500, 223 A.2d 8.[2] We hold that appel-

---

2  See also "Insurer's Liability to Judgment Creditor of Insured for Wrongful Refusal to Settle a Claim," Cornell Law Quarterly, Vol. 52, p. 778 et seq., 1967.

"The right of an insured to sue an insurer who negligently or in bad faith refuses to settle a claim against the insured is generally recognized. A more controversial question is whether the insured's judgment creditor may bring the action against the insurer. The earlier cases held that he could not because the cause of action is in

tort and lies for breach of duty personal to the insured. Furthermore, it has been argued, the judgment creditor in many cases benefits from the insurer's wrong and hence, as a matter of policy, should not be allowed to maintain the action.

"Since 1957, however, the California courts have allowed judgment creditors to take the insured's cause of action by assignment and recover directly from the insurer. The decisions found insured's action to be in either

lees had standing to maintain this action as assignees of the insured and the trial court properly denied the motion to dismiss.

Secondly, the appellant contends that looking at all the evidence in the light most favorable to Mrs. Little, she failed to sustain her burden of proving bad faith and hence the trial court erred in overruling the motions for directed verdict and for judgment notwithstanding the verdict.

What constitutes a breach of duty to exercise good faith? In Farmers Insurance Exchange v. Henderson, supra, we said:

"  *  *  *  It occurs to us that when the insurer is defending litigation against the insured, employs attorneys to represent the interests of both and has sole power and opportunity to make a settlement which would result in the protection of the insured against excess liability, common honesty demands that it not be moved by partiality to itself nor be required to give the interests of the insured preferential consideration. A violator of this rule of equality of consideration cannot be said to have acted in good faith. (citations omitted) The enunciation of the rule is not difficult but its application is troublesome. *It is a matter of consideration of comparative hazards.*" 82 Ariz. 335, 338, 313 P.2d 404, 406. (Emphasis added)

California also follows the "equality of consideration" doctrine and in looking to the elements of its "troublesome" application in Brown v. Guarantee Insurance Co., supra,

the California court set out the following factors:

"  *  *  *  the strength of the injured claimant's case on the issues of liability and damages; attempts by the insurer to induce the insured to contribute to a settlement; failure of the insurer to properly investigate the circumstances so as to ascertain the evidence against the insured; the insurer's rejection of advice of its own attorney or agent; failure of the insurer to inform the insured of a compromise offer; *the amount of financial risk to which each party is exposed in the event of a refusal to settle*; the fault of the insured in inducing the insurer's rejection of the compromise offer by misleading it as to the facts; and any other factors tending to establish or negate bad faith on the part of the insurer." [emphasis added] 319 P.2d 69, 75.

Several of the factors mentioned by the California court are not in issue in the present case. For instance there was never any discussion of contributions toward a settlement on the part of the Allens; there is nothing in the record to show General was misled by the Allens as to the facts of the original accident; it is not claimed that insured rejected the advice of its own attorney. (In fact at the time of trial the attorney for the company evaluated the settlement value of the case at $2,000 and felt the prospects of a verdict were 60—40% in favor of the defendant); there is no contention that the insurer failed to keep the insured informed as to settlement offers.

tort or contract and in either case to be assignable, the tort involving injury to insured's property rather than his person. In the 1966 case of Gray v. Nationwide Mut. Ins. Co., the Pennsylvania Supreme Court joined the California courts in allowing the insured's judgment creditor, as assignee of insured's contract cause of action, to recover directly from the insurer.

"The California and now Pennsylvania position is that which is most consistent with modern assignment law and contemporary goals of society. The natural interpretation of insured's

cause of action is that it is either in contract arising from breach of implied terms of the insurance policy, or in tort for non-personal injuries. Both types of action are assignable under the statutes and case law of most states. Furthermore, assignability is desirable because it decreases the likelihood of collusion, discourages wrongful action by insurers, benefits injured claimants by spreading their losses, and decreases litigation." p. 789.

See also In re Layton, 221 F.Supp. 667, 668 (D.Ariz.1963).

As to the adequacy of the investigation itself the record is undisputed that the company had an investigator on the job commencing with the day of the accident. On that date he obtained the statement of Claudie Allen, the statement of a witness to the accident, the police reports and photographs of the Havner motorcycle and the Allen automobile. Subsequently, and within a week of the accident a lengthy statement was taken from another eye witness, the Havner home' was contacted, the accident was discussed with the Allens on numerous occasions and the results of the investigation were all submitted to the Phoenix Claims Office of the company. The file was subsequently submitted to the company attorney who, in his own further investigation, obtained knowledge about the working condition of the Havner motorcycle from a friend of the deceased Havner lad, and information from plaintiff's attorney relative to the earnings of Jimmy Havner (who had been a carry-out boy at a market, $25 to $30 a week), damages to his motorcycle, and funeral expenses. The adequacy of the investigation has not been challenged by the appellee on appeal—nor do we see how a jury could have found any bad faith in this regard.

The claim was evaluated by the company claims manager and defense counsel. No effort was made by appellee to impeach their qualifications or their competency.

Now, let us look to the strength of claimant's case on the issue of liability and damages, as it would have appeared prior to the trial. Clearly, all can now see through hindsight that it would have been better for both the insureds and the insurer to have accepted the offer of settlement, but as was said in Ferris v. Employers Mutual Casualty Company, 255 Iowa 511, 122 N.W.2d 263:

"* * *. Again there is the implication that we should judge the fairness of the decision not to settle by the result. We suggest that if we are to venture into the area of what counsel 'should have known' in advance of the trial of a lawsuit as

shown by the final outcome, by a jury's decision, we are requiring of him the gift of foretelling the future not often given to mankind. We know of no mortal who has been vouchsafed this power since the days of the Bible prophets; and as we understand it, these ancient seers had access to some inside information not presently available to counsel in damage cases. The court placed an unfair burden on the defendant here * * * [at page 269]

* &ast; * * * *

"* * * We may not measure the reasonableness of the offer by the ultimate result of the litigation; it must be considered in the light of the case as it fairly appeared to the insurer and its authorized agents and attorneys at the time the offer was made. Whether Mr. Mitchell was mistaken in his judgment that he could successfully defend may be argued; but a mere mistake in judgment is not enough to show bad faith * * *" [page 270]

This accident occurred at 8:30 in the morning. Mrs. Allen was proceeding south on 17th Avenue, came to a stop at Buckeye Road where traffic was jammed or stacked up. A Mr. Ruth, traveling west on Buckeye moved his truck a little so Mrs. Allen could traverse the intersection. She thereafter proceeded through the opening Ruth had provided. Ruth then observed the Havner boy coming east on Buckeye at a distance of some 200 to 300 feet. According to Ruth the boy was lying down on the motorcycle, bent forward from the waist; his speed was estimated at 55 to 60 miles per hour and remained constant from the first time Ruth observed the motorcycle right up to the impact. Further, according to Ruth, no attempt to apply the brakes was ever made.

The physical evidence revealed no skid marks. Both the attorney for the insured and the attorney for the claimant recognized contributory negligence as an issue in the case. In evaluating liability

prospects the claims manager felt that the chances of a defense verdict were 75% and, as stated previously, the insurer's attorney felt that the odds in favor of defendant were at least 60–40.

As to the potential damage should a verdict be rendered against the insured the company saw that he was 17 years old at the time of the accident, unmarried, without dependents, and earning from 25 to 30 dollars a week. In determining what a possible verdict might be the attorney for the company felt that under our death statute the jury might well mitigate its verdict because of the fact that the boy was riding the motorcycle at the time.

With all these factors in mind the insurance attorney determined that if a jury returned a plaintiff's verdict it would range between a low of $3,000 and tops of $7,500 and the claims manager felt that it could not exceed $10,000. Within the judgment of General, then, first, that they had a fighting chance of winning the case hands down, and secondly, that if they did lose the verdict would range from $3,000 to $10,000 does it appear that they exercised equal consideration in measuring the comparative hazards of the insured and the insurer, Farmers Insurance Exchange v. Henderson, supra?

The appellee argues that the insured had only one interest and that was the financial loss they would incur if the verdict exceeded the policy limits; and that the company in refusing to accept settlement when offered within those limits gave no consideration to that interest. Mrs. Little contends that, under the well-established rule that the evidence must be viewed in the most favorable light to appellee, she established her prima facie case through the testimony of the company claims manager and the company attorney. This testimony in substance had the effect of showing that neither the claims manager nor the attorney took into consideration the policy limits in evaluating the claim, e. g.:

Q "Then you are saying that it didn't make any difference to your company that these people had only a $5,000 policy in determining what this case should be settled for, is that right?"

A [Claims Manager] "That is right."
* * *, and also
* * * * * · *

A "We don't believe that limits are a factor in determining the value of a file. A broken leg is worth the same to me whether I have a $5,000 or a $100,000 policy."
* * * * * *

Q "I ask you whether or not the policy limits of the Allens played any part in your evaluation of the value of the case?

A [Attorney] "You mean the amount of the policy?"

Q "Yes."

A [Attorney] "No."

Q "Has it ever?"

A "No."

We cannot agree with appellee's argument. It is obvious that they have rested their case on a gross misconstruance of the meaning of "equal consideration." Clearly the value of an unlitigated claim is determined on its own apparent merits or lack of them, or the possibility of liability being established, and on injuries and their extent being proven, and on such other factors as the bread-winning capacities of the injured party.

Surely all would agree that an insurance company would not breach its duty of good faith to the insured if it refused to settle a claim for $4,999.99 on a $5,000 policy when the question of liability was highly debatable, the apparent injury was extremely minor, and the injured was an unemployed adolescent. We state it in the ridiculous to point up the fallacy of appellee's argument.

Thus it should be clear that the evaluation of a case should not be de-

termined by looking to the policy limits. When an insurance company evaluates a claim without looking to the policy limits and as though it alone would be responsible for the payment of any judgment rendered on that claim it views that claim objectively, and in doing so renders "equal consideration" to the interests of itself and the insured. See American Fidelity & Casualty Co. v. L. C. Jones Trucking Co., Okl., 321 P.2d 685; Davy v. Public National Insurance Co., 181 Cal.App.2d 387, 5 Cal.Rptr. 488; Murach v. Mass. Bonding and Ins. Co., 339 Mass. 184, 158 N.E.2d 338; Bell v. Commercial Ins. Co. of Newark, N.J., 2 Cir., 280 F.2d 514.

■ Where an insurance company acts honestly and in good faith upon adequate information it should not be held liable because it failed to prophecy the result. If the insurer in good faith believed that it could successfully defend, it was not bound to relieve the Allens of all possible harm that might come from their election to purchase only $5,000 coverage in the light of present day dollar values and verdicts.

The record, however, also shows and clearly that General recognized the plaintiff, Mrs. Little, would most probably be able to establish a prima facie case against Mrs. Allen and thus that the question of liability would be for jury determination.[3] As has been previously pointed out the liability carrier also recognized and told their insureds that in the event a verdict were returned for plaintiff, Mrs. Little, it could "be greatly in excess of $5,000." Mr. Allen, who by virtue of the marital relationship was a co-defendant and

jointly subject to such excess liability insisted or strongly urged that the lawsuit be settled.

■ This was a wrongful death claim and the complaint prayed for relief in amount of $100,000. A seventeen year old boy had been taken from his mother. It appears to this court that General and its attorney were being less than realistic when they estimated a potential verdict at a low of $3,000 and a high of $10,000. In Arizona there is no statutory ceiling on wrongful death verdicts and the jury "shall give such damages as it deems fair and just with reference to the injury resulting from the death to the surviving parties * * * having regard to the mitigating or aggravating circumstances attending the wrongful act, neglect or default * * *" A.R.S. § 12–613. As opposed to General's estimate it is to be noted that the attorney for the plaintiff, who testified he had handled hundreds of personal injury cases, estimated a potential plaintiff's verdict in this case of from $10,000 to $30,000.

We agree with the courts and legal writers who have noted that even with the expertise and experience afforded liability carriers and competent trial lawyers they yet are not endowed with the gift of being able to accurately prophecy a jury verdict. However, under the terms of the policy the company is contracturally given the exclusive right to determine whether a settlement offer should be accepted.

When we apply the test of *Farmers Insurance Exchange,* supra, to the facts of this case; when we note by General's

---

3. During cross examination of General's attorney the following was elicited:

"Q In your evaluation of this case, is it correct to say that you felt that the plaintiff would be able to establish a prima facie case of negligence on the part of your insured, Mrs. Allen?

"A That was my opinion, sir.

  *     *     *     *     *

"Q So you recognised in the trial that you were facing that you were facing

that probably the plaintiff would sustain the burden of proof of showing that Mrs. Allen was basically negligent, and that it would be then incumbent upon the defendant to rebut this or to show that the boy who was killed was contributorily negligent, is that true?

"A. That is true, sir. I thought that this would be a case for jury determination."

own conservative and self-serving evidence that there were four chances in ten of losing this case and the possibility of suffering a verdict "greatly in excess of the policy limits"; and we note further that in accepting the settlement offer of $4,000 General would be paying only $1500 more than its $2500 offer of settlement, part of which would be and was spent in legal fees and court costs, we do not find it difficult to sustain the jury's finding that General did not exercise its duty of good faith. It did not give equal consideration to its own and the insured's comparative hazards.

■ Where policy limits should have no place in an objective evaluation of a claim, once that claim has been evaluated and there is determined, as here, as least a 40% possibility of liability being established and an obvious recognition that an adverse verdict can reasonably be expected to "greatly exceed" policy limits, equal consideration of the comparative hazards demands that the insurer give attention to the policy limits.

■ General next contends that the trial court erred in excluding certain documentary evidence and testimony. Sub-stantively, the documentary evidence would have shown the thoroughness of General's investigation of the claim and the basis of their evaluation. The excluded testimony was that of competent attorneys offered as expert witnesses to prove that General's attorney acted in accordance with accepted standards and procedures and that he had a high reputation in the field of evaluation, settlement and defense of accident claims.

We find in the case at bar that the documentary evidence and expert testimony were properly excluded. As previously noted the adequacy of the investigation and the competency of defense counsel were not challenged by appellees in the case. The proffered evidence was thus irrelevant to the issue of bad faith in this case.

■ Finally, General contends that the lower court erred in refusing to give its tendered instructions on the meaning of "bad faith" and on the proper burden of proof. We believe under the facts of this case the instructions were properly denied.[4] It is true that actions based on fraud must be proven by "clear and convincing" evidence, Dunahay v. Struzik,

---

4. *Defendant's requested Instruction No. 6:*
   "The burden of proof is upon the plaintiff in this case to prove by *clear, satisfactory and convincing evidence that the defendant was guilty of bad faith* in failing to settle the claim against the Allens in Cause No. 111201 within the limits of liability contained in the policy issued to Allens by the defendant.
   "Clear, satisfactory and convincing evidence is that which is not ambiguous, equivocal or contradictory. It is evidence which is so explicit so as to leave no substantial doubt and which is sufficient to convince ordinarily prudent minded people of the correctness of a conclusion.
   "If the plaintiff fails to prove defendant's bad faith by clear, satisfactory and convincing evidence, then your verdict must be for the defendant." [Emphasis added]
   *Defendant's requested instruction No. 7:*
   "The term, *'bad faith,'* as used in these instructions, *implies* dishonesty, a lack of fair dealing, *fraud*, and concealment. However, neither mistaken judgment nor unreasonable judgment is the equivalent of bad faith; and liability upon the part of the defendant for failing to accept an offer of settlement within the limits of the policy issued to Allens may not be predicated upon the defendant's failure to correctly predict the outcome of Cause No. 111201.
   "An insurance company acts in good faith in rejecting an offer of settlement after it has undertaken a reasonably diligent investigation to determine the facts of the case, is acting upon the opinion of a reasonably qualified legal advisor, and is of the honest belief that the risk of an adverse verdict is one which it would assume if there were no limits to its policy, providing the insured is informed of the offer of settlement, furnished with the results of the investigation made, and advised of the opinion upon which the rejection is based." [Emphasis added]

96 Ariz. 246, 393 P.2d 930; and it is equally true that one obvious species of "bad faith" is fraud. But, as we have shown above, the species of "bad faith" relied upon in this case was not actual fraud but a failure on the part of General to exercise its duty of giving "equal consideration" to the comparative hazards to its own interest and the interests of the policyholder. Under the rule of Farmers Insurance Exchange v. Henderson, supra, the instruction given by the trial court adequately covered the issue of good faith.

■ There being no contention of fraud in this case the proper burden of proof test was the usual "preponderance of the evidence."

Judgment affirmed.

McFARLAND, C. J., and STRUCKMEYER, BERNSTEIN and LOCKWOOD, JJ., concur.