715 P.2d 768

**EQUITY GENERAL INSURANCE COMPANY, INC., a corporation, Plaintiff-Appellant,**

v.

**C & A REALTY COMPANY, INC., an Arizona corporation; C & A Investment Company, an Arizona corporation; Kenneth H. Pruitt and R. Eileen Pruitt, and the Old Mill, Inc., an Arizona corporation, Defendants-Appellees.**

**No. 1 CA–CIV 6973.**

Court of Appeals of Arizona, Division 1, Department B.

Sept. 12, 1985.

Gust, Rosenfeld, Divelbess & Henderson by Richard A. Segal, James B. Wright, Phoenix, for plaintiff-appellant.

Sorenson, Moore & Julian by J. William Moore, Phoenix, for defendants-appellees Pruitts and Old Mill.

Hofmann, Salcito, Stevens & Myers, P.A. by Robert D. Myers, Leroy W. Hofmann, Phoenix, and Udall, Shumway, Blackhurst, Allen, Lyons & Davis, P.C. by John H. Lyons, Mesa, for defendant-appellee C & A Realty.

JACOBSON, Chief Judge.

This litigation developed in the wake of *Pruitt v. Pavelin*, 141 Ariz. 195, 685 P.2d 1347 (App.1984). As noted in *Pruitt*, Carole Pavelin was a real estate salesperson employed by C & A Realty Co., Inc. (C &

A). C & A carried a Professional Liability Insurance Policy issued by Equity General Insurance Company. As a result of the fraudulent acts of Pavelin, Pruitt brought suit against C & A. That litigation ultimately resulted in a judgment against C & A Realty for $158,698.33 in compensatory damages and $25,000 in punitive damages. That judgment was affirmed on appeal on the theory that C & A was negligent in hiring Pavelin. This appeal questions Equity General's liability for that judgment.

After C & A was sued by Pruitt, Equity General retained C & A's private counsel, John Lyons of the law firm of Udall, Shumway, Blackhurst, Allen, Lyons & Davis to represent C & A in that litigation.

After Lyons had been retained, Equity General sent a "reservation of rights" letter to C & A. The pertinent portion[1] of that letter provided:

> Certain allegations of the complaint assert a right on the part of the plaintiff to recovery of damages known as punitive or exemplary damages. It is the position of the insurer that such damages are not an insured liability....
>
> Therefore, while Equity General Insurance Company intends to protect your interest, they do so with the following reservations and qualifications:
>
> 1. The defense or investigation of this claim shall be without waiver of or prejudice to the right of the insurer to contend that any ... loss or damage associated with the above captioned claim is not within the terms, conditions, and provisions of the insurance coverage afforded by the subject insurance certificate.

A copy of the reservation of rights letter was not sent to the Udall law firm. The representative of C & A who did receive the letter stated he did not understand the letter, assumed that a copy had been sent to C & A's attorneys (the original shows no such copy designation) and simply filed the letter away. It is undisputed that C & A's counsel did not know of the reservation letter during the course of the Pruitt litigation. Equally undisputed is that punitive damages are specifically excluded from coverage under the policy and that attorney Lyons had a copy of the policy.

According to the affidavit of Lyons, during the course of the Pruitt litigation, Pruitt's attorney approached Lyons as to settlement, in the $50,000 to $60,000 range. Lyons approached Jim Baxter, the Equity General employee in charge of the Pruitt claim, seeking authorization to settle the claim for $40,000. Baxter would not authorize settlement for more than defense costs, which he thought should not exceed $7,500. Based upon this refusal, no further settlement negotiations occurred. During this time, Baxter did not mention to Lyons that coverage was being disputed.

> Lyons filed an affidavit which stated: If this possible denial of coverage had been mentioned, I would have then gone to C & A Realty and explained the potential for a large judgment existed, that Equity General was going to deny coverage and that C & A Realty should authorize me to settle the case and pay the settlement from C & A Realty's own monies, and then sue Equity General to recover the sums paid.

Equity General subsequently brought this declaratory judgment action seeking a determination that it owed nothing under the terms of the policy. The trial court, on motion for summary judgment, held that Equity General was estopped to deny coverage and held it liable for all claims against C & A Realty, including punitive damages. As previously indicated, the sole issue now on appeal is the propriety of the punitive damage award.

█ C & A, while conceding that providing a defense under a valid reservation of rights does not constitute an estoppel, *see,*

---

1. Equity General originally contended in this appeal that it was not liable for either compensatory or punitive damages awarded against C & A. Based upon our opinion that C & A was negligent, a risk conceded by Equity General to be covered under the policy, Equity General admits liability for the compensatory damages. The sole issue on appeal is its liability for punitive damages.

*Damron v. Sledge*, 105 Ariz. 151, 460 P.2d 997 (1969), nevertheless contends that the reservation letter utilized here was ineffective, primarily on the basis that it was "sugar coated." We reject this contention. In our opinion, the letter, in a straightforward manner, informed a reader of average intelligence that while the insurer was providing a defense, it was doing so without waiving any rights to contest liability under the policy. The language as to punitive damages is especially clear. We hold that the notice of reservation of rights fairly informed the insured of the insurer's position and did so in a timely fashion. *See,* 14 Couch, *Cyclopedia of Insurance Law,* § 51.82 (2d ed. 1982).

C & A argues, however, that during the course of the litigation, Equity General took a position that was inconsistent with its reservation of rights letter, that is, it solely controlled settlement negotiations and thus deprived C & A, to its detriment, of making its own settlement. In essence, C & A is arguing, and the dissent agrees, that Equity General is estopped to deny coverage for punitive damages, due to its failure to apprise the Udall firm of the existence of the reservation of rights letter.

Estoppel is created, where one party, by its conduct, induces another to believe in certain material facts, which inducement results in justifiable reliance thereon resulting in injury to the person thus relying. *State Farm Auto Ins. Co. v. Robison,* 11 Ariz.App. 41, 461 P.2d 520 (1970). This principle of law gives rise to the necessity of a reservation of rights letter in the first instance.

■ The normal liability policy imposes upon an insurer several distinct and separate duties, one of which is the duty to defend. *State Farm Auto Ins. Co. v. Civil Service Emp. Ins. Co.,* 19 Ariz.App. 594, 509 P.2d 725 (1973). An insured is entitled to know early in the litigation process whether the insurer intends to honor that duty in order that the insured may take steps to defend himself. *Ebert. v. Balter,* 83 N.J.Super. 545, 200 A.2d 532 (1965). If in fact the insurer undertakes that defense

the insured may reasonably rely upon the non-existence of policy defenses. To hold otherwise would allow the insurer to conduct the defense of the action without the knowledge of the insured that a conflict of interest exists between itself and the insurer. The conflict is that the insurer retains a policy defense which would relieve the insurer of all liability while simultaneously depriving the insured of the right to conduct his own defense. *See* 7C Appleman, Insurance Law & Practice (Berdal ed.) § 4694 at 352 (1979); *Lockhart v. Allstate Ins. Co.,* 119 Ariz. 150, 579 P.2d 1120 (App. 1978). It is the reliance of the insured upon the insurer's handling of the defense and the subsequent prejudice which gives rise to an estoppel in the first instance against the insurer from raising policy defenses. *Hoyt v. St. Paul Fire & Marine Ins. Co.,* 607 F.2d 864 (9th Cir.1979) (applying Arizona law). On the other hand, the insurer should not be faced with the dilemma of either refusing to defend and running the risk that the refusal may later prove to have been wrongful or defending and thus being estopped to deny coverage. The answer to this problem is the reservation of rights letter. As stated in *Damron v. Sledge, supra:*

> Where the carrier sends its insured a notice that it is reserving its rights to contest liability for any judgment, and then goes ahead and defends the action, it is almost uniformly held that by this notice the company may defend and use its best efforts to prevent an excessive verdict, without thereby waiving its rights to raise the question of liability under the terms of the policy at a later date.

105 Ariz. at 155, 460 P.2d at 1001.

■ While it is clear that the reservation of rights principle has its genesis in the policy provisions giving rise to the duty to defend, it is equally clear that the duty to consider offers of settlement arises out of the insurer's obligation to give equal consideration to its own and the insured's comparative hazards. *Farmers Ins. Exch. v. Henderson,* 82 Ariz. 335, 313 P.2d 404

(1957); *General Accident Fire & Life Assurance Corp. v. Little*, 103 Ariz. 435, 443 P.2d 690 (1968).

■ Moreover, this duty to give equal consideration to offers of settlement exists separate and apart from the duty to defend. *State Farm Auto Ins. Co. v. Civil Service Emp. Ins. Co., supra.* It therefore follows that an insurer which wrongfully refuses to consider valid offers of settlement is liable to its insured, even though it has dutifully honored its obligation to defend. In this context, it then becomes completely immaterial what attorney Lyons would have done in connection with offers of settlement had he known of the reservation of rights letter. If Equity General had liability under its policy and it wrongfully refused to consider valid offers of settlement, it is guilty of bad faith and is liable therefor, regardless of Lyon's knowledge. This would be true not on the basis of any estoppel against Equity General, but rather because it breached its duty to give equal consideration to offers of settlement. C & A has not suggested, however, that Equity General was guilty of bad faith in refusing to consider offers of settlement.

■ What is suggested is that if the position Equity General took in its reservation of rights letter was valid (that it did possess valid policy defenses to this action), then counsel for the insured would have conducted the defense of the action differently had he known of these defenses. However, the failure to possess this knowledge is not the fault of Equity General, but rather the failure of C & A, counsel's principal, to relay this information to its agent. We have previously held that the reservation of rights letter was clear and unambiguous and adequately informed anyone of average intelligence that Equity General was claiming policy defenses to the Pruitt litigation. C & A was completely informed as to its options in view of that position. It cannot now take the position that by ignoring the information received and the option set forth, liability can be imposed on Equity General for damage coverage not provided in the policy and for which C & A did not contract or pay premiums.

For the foregoing reasons, the judgment of the trial court imposing liability against Equity General for payment of punitive damages is reversed. In all other respects the judgment is affirmed.

GREER, J., concurs.

KLEINSCHMIDT, Judge, dissenting.

I respectfully dissent. I do agree that the reservation of rights letter that Equity General sent to C & A was not sugar-coated and would have been adequate had it also been sent to counsel for C & A. I believe, however, that material facts remain in dispute on the issue of whether Equity General acted in bad faith and that C & A should be entitled to litigate that issue.

A detailed reference to the underlying facts is appropriate: After C & A was sued by Pruitt, Equity General retained the law firm of Udall, Shumway, Blackhurst, Allen, Lyons & Davis to defend C & A. This law firm had previously represented C & A as its private counsel handling any problems arising in the ordinary conduct of the company's business. The lawyer who had primary responsibility for the Pruitt lawsuit was John Lyons.

Shortly after the Pruitt lawsuit was filed, and after the Udall law firm had been retained to handle the case, Equity General sent a "reservation of rights" letter to C & A. It did not send a copy of that letter to the law firm. The letter was received by a representative of C & A who had no legal training and who testified that he did not understand the significance of the letter. Based on his assumption that Lyons knew about the letter, C & A's representative did not mention it to the attorney. Even though Pruitt eventually filed an amended complaint against C & A, and Lyons' firm forwarded the second complaint with an explanation of its differences to Equity General, the insurance company never advised Lyons, or readvised C & A, that it was questioning coverage for any judg-

ment rendered in the Pruitt lawsuit. The first time Lyons learned of the reservation of rights was after judgment was entered against C & A Realty.

As Pruitt's case against C & A proceeded, Lyons had a number of exchanges with Jim Baxter, an Equity General employee who was handling the claim for the insurer. More than two years after the initial complaint was filed by Pruitt, Pruitt's attorneys suggested in pre-trial negotiations with Lyons that Pruitt would settle for an amount between $50,000 and $60,000. Lyons informed Baxter of the offer and suggested that Baxter authorize settlement in the amount of $40,000 because of Lyons' concern about the high damages which might potentially be assessed against C & A. Without mentioning any question about coverage, Baxter said he would not authorize settlement for more than the defense costs, which he thought should not exceed $7,500. Although Baxter recognized that the potential existed for a high judgment, he said he "was going to take a chance on trying this case." Based on Baxter's decision, Lyons told Pruitt that settlement would not be possible. At no time during his discussion with Lyons did Baxter mention the possibility that Equity General would deny coverage.

Lyons filed an affidavit as to what he would have done had he known about the reservation of rights:

> If this possible denial of coverage had been mentioned, I would have then gone to C & A Realty and explained the potential for a large judgment existed, that Equity General was going to deny coverage, and that C & A Realty should authorize me to settle the case and pay the settlement from C & A Realty's own monies, and then sue Equity General to recover the sums paid.

After judgment was ultimately entered against C & A, the insurer advised that it had been defending under a reservation of rights. In contrast to the original reservation of rights letter, which had only been sent to C & A, Equity General sent the later notice to both C & A and Lyons.

There appears to be no case law on whether a reservation of rights letter must be sent to both the insured and counsel for the insured. Certainly, as this case illustrates, that would be the better practice. In any event, several basic principles interact and bear on the circumstances of this case in such a way as to raise unresolved questions of fact.

First, counsel, even though originally hired by the insurance company, "owes him [the insured] 'undeviating and single allegiance' whether the attorney is compensated by the insurer or the insured." *Parsons v. Continental National American Group*, 113 Ariz. 223, 227, 550 P.2d 94, 98 (1976), quoting *Newcomb v. Meiss*, 263 Minn. 315, 116 N.W.2d 593 (1962). Although Lyons presumably had access to the insurance policy and might have discovered that there were express exclusions for fraud, for intentional acts and for punitive damages, and although he conceded that he knew that most liability policies excluded coverage for fraudulent or intentional acts, he, as attorney for C & A, had no duty to Equity General to suggest coverage defenses to it. *Parsons*, 113 Ariz. at 227, 550 P.2d 94. At most, his suspicions might have prompted him to inquire of C & A as to whether it had any notice that Equity General was defending under a reservation of rights.

Second, an insurer owes a duty to consider, in good faith, the totality of the insured's interests when it refuses to settle an action against the insured within the policy limits. *Farmers Insurance Exchange v. Henderson*, 82 Ariz. 335, 313 P.2d 404 (1957). It must take into account the following factors:

> [T]he strength of the injured claimant's case on the issues of liability and damages; attempts by the insurer to induce the insured to contribute to a settlement; failure of the insurer to properly investigate the circumstances so as to ascertain the evidence against the insured; the insurer's rejection of advice of its own attorney or agent; failure of the insurer to inform the insured of a compromise

offer; *the amount of financial risk to which each party is exposed in the event of a refusal to settle;* the fault of the insured in inducing the insurer's rejection of the compromise offer by misleading it as to the facts; *and any other factors tending to establish or negate bad faith on the part of the insurer.* General Accident Fire & Life Assurance Corp. v. Little, 103 Ariz. 435, 439, 443 P.2d 690, 694 (1968), quoting *Brown v. Guarantee Insurance Co.,* 155 Cal.App.2d 679, 689, 319 P.2d 69, 75 (1957). (emphasis added)

Whether an insurer should have, in the exercise of due care, settled an action against its insured for an amount within the policy limits is a question for the trier of fact. *Globe Indemnity Co. v. Gen-Aero, Inc.,* 459 S.W.2d 205 (Tex.App.1970); *Peterson v. Allcity Insurance Co.,* 472 F.2d 71 (2d Cir.1972). I think the rules with respect to a duty to settle within the policy limits apply to settlement on terms that are *within the coverage* of the policy.

This means in respect to this case that it is possible that Equity General acted in bad faith in refusing to settle on terms that were covered by the policy. Given Lyons' experience, integrity and ability, it seems likely that the settlement agreement would have been structured as compensation to the plaintiff Pruitt for C & A's negligence, as opposed to compensation for fraud or punitive damages, thus keeping it within the coverage of the policy. Even if that were not the case, Lyons could have done what he said in his affidavit he would have done, that is, have his client settle and then bring an action against the insurer to recover what the client paid out. Of course, if Lyons were unaware of the reservation of rights, he would hardly take the steps necessary to protect C & A from a judgment not covered by the policy.

Third, the law of estoppel figures into the equation. An estoppel may occur where one party, by its conduct, induces another to believe and have confidence in certain material facts, which inducement results in acts in reliance thereon, justifiably taken, which causes injury to the person thus relying. *State Farm Mutual Automobile Insurance Co. v. Robison,* 11 Ariz.App. 41, 45, 461 P.2d 520, 524 (1970). In the context of this case, all parties originally contributed to the failure to communicate which led Lyons to believe that there was full coverage for all claims. C & A should have told Lyons about the letter. Lyons arguably should have inquired of C & A about a reservation of rights. Equity General arguably should have sent the letter to both C & A and Lyons. Even if Lyons and C & A were derelict, if Equity General was aware that Lyons was operating on the belief that there was complete coverage (and his failure to remonstrate with the insurer's refusal to settle might well have tipped the company off to the fact that such was his assumption), then Equity General should have to pay the judgment for punitive damages. This situation is analogous to the rule of contract law that a unilateral mistake of fact is not grounds to reform an agreement unless one party knows that the other party is mistaken about its rights and obligations under the agreement and takes advantage of that mistake. *See Isaak v. Massachusetts Indemnity Life Insurance Co.,* 127 Ariz. 581, 623 P.2d 11 (1981).

Crystallized, what this means is that there are disputed issues of material fact as to whether Lyons acted justifiably in not independently exploring the coverage question and whether Equity General knew or should have known that the insured and its attorney were operating on the premise there was complete coverage. The case must be tried to resolve these issues. I simply do not agree with the majority that there is no contention that Equity General was guilty of bad faith in not settling. While that claim may not be sharply focused, it is subsumed in C & A's argument concerning the duty of the insurer to give notice of the reservation of rights to C & A's counsel.

Based upon the foregoing, I would reverse the summary judgment and remand this case for trial.