793 P.2d 560

**MUTUAL INSURANCE COMPANY OF ARIZONA, an Arizona corporation, Plaintiff–Counterclaim Defendant–Appellee,**

**v.**

**Thomas BODNAR, M.D., Defendant–Counterclaimant–Appellant,**

**No. 1 CA–CV 88–574.**

Court of Appeals of Arizona, Division 1, Department A.

May 31, 1990.

Lewis and Roca by Roger W. Kaufman, Susan M. Freeman, Karen Carter Owens, Phoenix, for plaintiff-counterclaim defendant-appellee.

Burch & Cracchiolo, P.A. by Daryl Manhart, Phoenix, for defendant-counterclaimant-appellant.

## OPINION

KLEINSCHMIDT, Judge.

Thomas Bodnar, M.D., appeals from summary judgment in favor of his medical malpractice liability insurer, Mutual Insurance Company of Arizona (MICA). The trial court found that MICA had no duty to pay a $702,000 default judgment in favor of John Goglia and against Bodnar. We find that MICA's failure to cooperate in Bodnar's efforts to negotiate an agreement to set aside the default judgment bars it from asserting its policy defenses. Accordingly, we reverse the summary judgment and remand with directions to enter judgment in favor of Bodnar.

On December 11, 1984, Goglia served Bodnar with a complaint seeking $1 million in damages for alleged malpractice. The events giving rise to that litigation are set forth in *Goglia v. Bodnar*, 156 Ariz. 12, 749 P.2d 921 (App.1987). An answer to the complaint was due on December 31, 1984.

Bodnar forwarded the complaint, which identified Goglia as a Cigna patient, to Cigna Healthplan, Inc. for a defense and to provide liability coverage. Cigna returned the complaint to Bodnar on January 2, 1985, with a statement that Goglia was not a Cigna patient and Cigna would not provide a defense.

Bodnar was covered by a policy issued by MICA. However, he did not forward the complaint to MICA until March 1, 1985. By that date, default had been entered and a hearing on damages had taken place. The default judgment itself was not entered until March 8, 1985.

MICA, believing itself prejudiced by Bodnar's failure to notify it of the pending action in a timely manner, provided Bodnar with an attorney for his defense pursuant to a reservation of rights. Bodnar's attorney moved to set aside the default. MICA filed a motion through separate counsel requesting leave to intervene in the malpractice action "not as a named party but for the limited purpose of providing additional information." The trial judge ordered intervention without limitation. However, MICA did not file any pleadings requesting relief on its own behalf.

MICA took the position in the malpractice litigation that if the default judgment were not set aside, MICA was not obligated to provide coverage to Bodnar because of

his violation of the following policy provision:

> If claim is made or suit is brought against You, You must immediately forward to MICA all materials related to the claim or suit. You must also take reasonable steps to prevent further injury or damages.

During the course of the proceedings to set aside the default, Bodnar's attorney filed a motion to stay the default judgment. This was granted on condition that Bodnar post a $100,000 bond. Bodnar personally provided a surety bond in that amount.

Bodnar's motion to set aside the default judgment was based on Rule 60(c)(1), Arizona Rules of Civil Procedure, 16 A.R.S., and urged that his actions constituted excusable neglect and that he had a meritorious defense. The trial court found that Bodnar's initial actions in forwarding the complaint to Cigna were reasonable, but that his failure to answer or forward the complaint to MICA until March 1, 1985, was inexcusable. Accordingly, the trial court denied the motion to set aside the default judgment. The trial court subsequently ordered that the $100,000 bond posted by Bodnar be applied to the judgment. Bodnar's attorney appealed from the order denying his motion to set aside the default judgment. MICA did not file a notice of appeal.

During the summer of 1985, Bodnar's attorney entered into negotiations with Goglia's attorney to have the default set aside by stipulation. Bodnar sought approval from MICA for a negotiated agreement by which he could have the default removed. MICA declined to approve any proposals made by Bodnar, nor did it suggest any modifications or alternatives. MICA stated its intent to continue to defend under a reservation of rights even if the default were set aside.

While the appeal in *Goglia v. Bodnar* was pending, MICA initiated this declaratory judgment action. The trial court continued the matter until the appeal in the malpractice action was completed.

On September 1, 1987, this court issued its opinion in *Goglia v. Bodnar*, affirming the trial court's refusal to set aside the default. The opinion holds that Bodnar had no standing to raise MICA's interest on appeal. Therefore, this court did not consider Bodnar's argument that MICA was entitled to have the default set aside because of its potential liability.

After the Arizona Supreme Court denied Bodnar's petition for review, the trial court considered and ruled on the parties' motions for summary judgment in the declaratory judgment action. The trial court granted MICA's motion for summary judgment, holding that MICA was not obligated under its insurance contract with Bodnar to defend or to pay the Goglia judgment. Bodnar and Goglia filed notices of appeal to this court. Goglia and MICA later settled their dispute and Goglia is no longer a party to this appeal.

Bodnar first argues that had MICA moved on its own behalf to set aside the judgment, his own interests would have been protected. MICA counters with the insistance that the trial court would not have set aside the default with respect to it unless it waived its policy defense. We need not resolve those issues because Bodnar is entitled to prevail on another ground.

Bodnar's policy with MICA prevented him from making any agreements or compromises with Goglia without first obtaining MICA's approval. The policy specifically prohibited Bodnar from making any voluntary payments or assuming any obligations.

MICA provided Bodnar with separate counsel to meet its defense obligations to Bodnar. *See Holt v. Utica Mut. Ins. Co.,* 157 Ariz. 477, 482–83, 759 P.2d 623, 627–28 (1988). During the summer of 1985, Goglia's counsel and Bodnar's counsel negotiated to set aside the default, which would have enabled a presentation of Bodnar's defense on the merits. Bodnar's counsel attempted to get MICA's approval on an agreement stipulating that the default be set aside.

The proposals suggested by Bodnar included some alternatives in which MICA would pay all or part of the cost of buying

out of the default. One letter from Bodnar's counsel makes clear that he was hoping that MICA would agree to reimburse Bodnar up to $100,000 from any settlement or judgment in the case. This would have created an inherent conflict between Bodnar and MICA because Bodnar would have had an incentive to prove that Goglia's claim was worth at least $100,000. But Bodnar's proposal did not rest at this point. Bodnar's counsel clearly told MICA that his ultimate position was to obtain MICA's assurance that it would approve an arrangement allowing Bodnar himself to buy out the default if MICA agreed not to raise any other policy defenses.

A letter from Bodnar's counsel to MICA's counsel dated July 1, 1985, includes the following:

> There is some indication that the Plaintiff may be willing to set aside the default conditioned upon payment of a sum of money. The terms and conditions would simply be that the Plaintiff receive a certain amount of money in exchange for which they [sic] would voluntarily set aside the default judgment. The parties would then be in the same position as if the complaint had been served on Doctor Bodnar in December, 1984. Under the above circumstances, on behalf of Doctor Bodnar, we demand that MICA continue to assume the defense of Mr. Goglia's claim against Doctor Bodnar as well as agree to indemnify him up to the limits of his policy. Please confirm MICA's position in this regard.

After setting forth various proposals by which Dr. Bodnar might recover some of the money he paid to set aside the judgment, counsel stated:

> I want to emphasize that *the demand set forth above in paragraph two is separate from the alternative payback proposals* set forth in paragraphs three and four of this letter. We believe that once the default is set aside, without regard to any payback to Doctor Bodnar, it is *MICA's obligation to defend and indemnify Doctor Bodnar....* (Emphasis added.)

In response to this letter, MICA's counsel stated:

> MICA is concerned that any deal that Dr. Bodnar might make with the plaintiff could conceivably prejudice MICA. If Dr. Bodnar has any incentive to see to it that the plaintiff recovers, then MICA would be prejudiced by the fact that Dr. Bodnar had permitted a default to be entered and then has made a deal which harms MICA in order to buy out of his default.

> Under the circumstances, it would seem best for MICA to continue to defend Dr. Bodnar under a complete reservation of rights. *If Dr. Bodnar chooses to pay money to the plaintiff for purposes of vacating the default, then all aspects of that transaction and its later effects will remain subject to scrutiny under MICA's reservation of rights....* (Emphasis added.)

In response to MICA's letter, counsel for Bodnar responded by a letter dated July 15, 1985, as follows:

> In paragraph two of your letter you state that MICA is concerned that any deal Dr. Bodnar might make with the Plaintiff could conceivably prejudice MICA. In our letter of July 1, 1985, *we anticipated a scenario where the default could be vacated by payment of money without regard to repayment to Dr. Bodnar and the case returned to its status in December of 1984.* Your comment on that in paragraph three is that 'then all aspects of that transaction and its later effects will remain subject to scrutiny under MICA's reservation of rights.' Specifically, if the default is 'bought out' without regard to repayment to Dr. Bodnar, it appears that MICA is not prejudiced in any way. In fact, MICA could conceivably receive the benefit of the payment as an offset against any verdict.

> On behalf of Dr. Bodnar, *we request that you specify what conceivable prejudice could occur to MICA in the event the case were reinstated to its status of December, 1984.* Obviously, if there were 'under the table' transactions, 'side' transactions, or the like, MICA would be able to raise these in any type of defense of its obligation to pay under the policy.

What we propose is a simple 'buy-out' of the default and a reinstatement of the case to its status of December of 1984. Under those circumstances we believe that MICA would have an obligation to defend and indemnify Dr. Bodnar. Obviously, if Dr. Bodnar does something to prejudice MICA's rights after reinstatement of the case, that would be a separate matter. (Emphasis added.)

Counsel's letter then goes on to demand MICA's unequivocal position with respect to defense and indemnification of the lawsuit if Bodnar paid to set aside the default and the status of the case returned to the position it was in after the complaint had been served and before default had been entered.

The letters from Bodnar's counsel reflect his concern that MICA not try to deny liability based on alleging Bodnar's non-cooperation or violation of the policy provisions which prohibit Bodnar from making any "voluntary payments" or otherwise making an unapproved agreement with Goglia to set aside the default. *See, e.g., Arizona Property & Cas. Ins. Guar. Fund v. Helme*, 153 Ariz. 129, 136–37, 735 P.2d 451, 458–59 (1987). It is clear that this concern was well-founded given the statement of MICA's counsel that "all aspects of that transaction and its later effects will remain subject to scrutiny under MICA's reservation of rights."

At this point, MICA's own interests clearly conflicted with those of Bodnar. If MICA could successfully assert a defense to coverage under its policy based on the default or Bodnar's entry into a separate agreement with Goglia, MICA could avoid all liability for any potential judgment in favor of Goglia. However, by approving an agreement to set aside the default, MICA would be liable if Goglia were to settle the case or prevail in a trial on the merits.

In response to the July 15th letter from Bodnar's counsel, MICA's counsel sent another letter. After first stating that he felt that MICA had done everything that it could to assist Dr. Bodnar, he stated that no one could foresee the future to predict what prejudice might occur if MICA agreed to defend Dr. Bodnar without a reservation of rights. The letter then requested Bodnar's counsel to cite any case, statute or other authority which would require MICA to defend and indemnify Dr. Bodnar without a reservation of rights.

In response, Bodnar's counsel acknowledged that an insured may not condition an insurer's right to defend upon an agreement to waive its right to later litigate the question of coverage. The letter goes on to say:

However, Dr. Bodnar was seeking to determine what possible prejudices were envisioned by MICA in the event the case was returned to its original position with an answer being due from Dr. Bodnar. That question remains unanswered. The question then presented would be, assuming MICA had been advised of the suit in December, 1984, at the time Dr. Bodnar was served, what, if any, rights would have MICA reserved.

MICA never answered this question.

■ Part of an insurer's duty of good faith is to do nothing to impair the rights of the insured to receive the benefits of the insurance contract. *Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565 (1986). In *Rawlings*, the Arizona Supreme Court stated:

We hold, therefore, that one of the benefits that flow from the insurance contract is the insured's expectation that his insurance company will not wrongfully deprive him of the very security for which he bargained or expose him to the catastrophe from which he sought protection. Conduct by the insurer which does destroy the security or impair the protection purchased breaches the implied covenant of good faith and fair dealing implied in the contract. [Citation omitted.]

. . . .

. . . . [A]lthough the insured is entitled to expect that the insurer will be 'on his side' at least to the extent of treating him honestly and fairly, we do not go so far as to hold that the insurer is a fiduciary, . . . but do hold that *it has some duties of a fiduciary nature.* [Citations omitted.] *Equal consideration, fairness and honesty are among them.*

*Id.* at 155, 726 P.2d at 571 (emphasis added).

Where an insurer believes that it has a valid exclusion which would relieve it of a duty to defend a case or to provide coverage, the insurer can defend the suit under a reservation of rights. However, it must communicate its reservation of rights to the insured to inform the insured of its position as to coverage. *See Equity General Ins. Co. v. C & A Realty Co.*, 148 Ariz. 515, 519, 715 P.2d 768, 772 (App. 1985). *See generally* 14 *Couch on Insurance* 2d § 51:88 (rev. ed. 1982).

The above-quoted letters demonstrate that Bodnar's counsel was attempting to find out the basis for MICA's insistence upon defending under a reservation of rights even if the default judgment were set aside without cost to MICA and the question of prejudice caused by a late notice was no longer a factor. The letters make it equally clear that MICA refused to explain any basis for continuing to defend under a reservation of rights, presumably because it could articulate no prejudice stemming from Bodnar's failure to give timely notice of the action if the default were set aside. We can think of none.

MICA has argued that because it was defending under a reservation of rights, Bodnar was free to negotiate with Goglia and settle on reasonable terms without MICA's participation. *See United Services Auto. Ass'n v. Morris*, 154 Ariz. 113, 119, 741 P.2d 246, 252. However, this argument overlooks the fact that Bodnar was not negotiating a settlement of the lawsuit. Rather, he was attempting to negotiate an agreement to set aside a default which would permit the case to be tried on the merits. As a practical matter, Bodnar's ability to obtain Goglia's consent would be affected by Goglia's evaluation of any coverage defenses that MICA intended to assert. Indeed, the letter from MICA's counsel to Bodnar's counsel states that MICA intended to scrutinize any agreement that Bodnar would make with Goglia as possible grounds for asserting non-coverage.

MICA made no suggestions or alternative proposals which would allow Bodnar to eliminate the claimed prejudice resulting from Bodnar's delay in giving notice of the lawsuit. It had not previously identified any grounds other than the delay in notice as a basis for its reservation of rights. It refused to do so in response to Bodnar's specific requests. Bodnar did not ask MICA to forgo any later discovery of collusion or other policy violations by Bodnar. In any event, MICA could not have been estopped to deny coverage for later discovered policy violations. *United Services Auto. Ass'n v. Morris*, 154 Ariz. at 117, 741 P.2d at 250. *See generally* 14 *Couch on Insurance* 2d § 51:88 (rev. ed. 1982). MICA acted in a manner most likely to absolve it from all liability under its policy coverage and to deprive Bodnar of the benefits for which he purchased the insurance. We conclude that MICA's conduct in these circumstances estops it from asserting that it was prejudiced as a result of the default judgment by its obstructive behavior hampering its insured from having that default judgment set aside.

Because we reverse the judgment based on MICA's conduct in failing to assist Bodnar's efforts to negotiate setting aside the default judgment, we do not consider Bodnar's claim that there were issues of fact with respect to whether his delay in notifying MICA of the lawsuit was excusable.

We reverse summary judgment in favor of MICA and remand to the trial court with directions to enter judgment finding that MICA is responsible for defending and indemnifying Bodnar in *Goglia v. Bodnar*, Maricopa County Cause No. C–530579. Bodnar has requested attorneys' fees based on A.R.S. section 12–341.01(A) both for the trial and on appeal. We direct the trial court to reconsider Bodnar's request for attorneys' fees in light of this decision. We grant Bodnar his attorney's fees on appeal pursuant to A.R.S. section 12–341.01(A).

EHRLICH, Acting P.J., and TAYLOR, J., concur.