NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

NAVIGATORS INSURANCE COMPANY,
*Plaintiff/Appellee,*

*v.*

FIRST MERCURY INSURANCE COMPANY,
*Defendant/Appellant.*

No. 1 CA-CV 19-0744
FILED 10-6-2020

———————————————

Appeal from the Superior Court in Maricopa County
No. CV2015-008833
The Honorable Teresa A. Sanders, Judge

**AFFIRMED**

———————————————

COUNSEL

Raymond, Greer & McCarthy, P.C., Scottsdale
By Michael J. Raymond, Daniel W. McCarthy
*Counsel for Plaintiff/Appellee*

The Cavanagh Law Firm, P.A., Phoenix
By Timothy R. Hyland, Jordan R. Plitt
*Counsel for Defendant/Appellant*

---

**MEMORANDUM DECISION**

---

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge D. Steven Williams and Judge David D. Weinzweig joined.

---

**T H U M M A**, Judge:

¶1   This appeal concerns an excess insurer's claim against a primary insurer for breaching its duty of good faith in failing to settle an underlying claim. A jury found defendant First Mercury Insurance Company liable and awarded plaintiff Navigators Insurance Company $1 million in damages. First Mercury challenges the sufficiency of the evidence supporting that verdict, as well as the superior court's rejection of its proposed jury instructions, failure to grant First Mercury judgment as a matter of law, and award of attorneys' fees to Navigators. Because First Mercury has shown no error, the judgment is affirmed.

**FACTS AND PROCEDURAL HISTORY**

**I.  The Personal Injury Case.**

¶2   This case arises out of a personal injury case filed by Michael Wiley, which resulted in a $3.95 million jury verdict against an insured gym. Wiley was seriously injured and permanently impaired when one of the gym's stair climbers malfunctioned. As the gym's primary insurer, First Mercury was obligated to pay the first $2 million of any verdict or settlement above the gym's $250,000 self-insured retention amount (akin to a deductible). As the gym's excess insurer, Navigators would pay damages above $2 million.

¶3   Wiley sued the gym for premises liability and negligence, claiming the injury prevented his return to work as a probation officer. Wiley sought $175,000 in medical expenses, about $3 million in lost earnings, pain and suffering, and disability. Wiley and his wife also sued for loss of consortium damages.

¶4   When the gym realized the Wileys' claims could not be resolved within its self-insured retention amount, it tendered the defense to First Mercury, which First Mercury accepted. Given the gym's apparent liability, discovery largely focused on damages. First Mercury weighed settlement options at various points based on estimated jury verdicts

provided by its counsel and claims adjuster. Worst-case figures increased as discovery proceeded — from $900,000 18 months before trial to $4.2 million a month before trial. But First Mercury believed a verdict not exceeding $1.3 million was the most likely outcome.

¶5            Settlement negotiations continued through trial. The Wileys reduced their demand from $2 million to $1.5 million, while First Mercury increased its offer from $800,000 to $1.1 million. Both the gym and Navigators urged First Mercury to settle the case before a verdict, but First Mercury would go no higher — even though it had previously approved a settlement of up to $1.25 million.

¶6            As First Mercury had anticipated, evidence at trial established the gym's liability. Defense witnesses conceded the gym had not maintained the stair climber according to the manufacturer's guidelines. The court rejected First Mercury's argument that Wiley had assumed the risk of injury and gave a spoliation instruction because the gym had lost important evidence. Accordingly, the defense focused on disproving damages — especially Wiley's claim for $2.8 million in lost future earnings. First Mercury called vocational rehabilitation and economics experts to opine that Wiley's earning capacity was unaffected by the accident.

¶7            Ultimately, however, the jury returned a unanimous verdict awarding the Wileys $3.95 million, consistent with First Mercury's pretrial worst-case scenarios. Because this amount exceeded First Mercury's policy limits, Navigators assumed control and settled the case for $3 million. Navigators then sued First Mercury under the doctrine of equitable subrogation for breaching its duty to negotiate in good faith. As damages, Navigators claimed the $1 million settlement it had paid the Wileys plus interest, attorneys' fees and costs.

## II.      This Equitable Subrogation Case.

¶8            Navigators' case against First Mercury is based on the principle that, when the gym tendered its defense to First Mercury, First Mercury had an obligation to negotiate in good faith on the gym's behalf. First Mercury's refusal to settle a claim that should have been settled, Navigators claims, was a breach of this duty of good faith and would have exposed the gym to liability absent Navigators' excess coverage. Because it was this excess coverage that shifted the risk of loss from the gym to Navigators, Navigators was subrogated to the rights of the gym and therefore could sue First Mercury for failing to negotiate in good faith on the gym's behalf. *See generally Hartford Accident & Indem. Co. v. Aetna Cas. &*

*Sur. Co.*, 164 Ariz. 286, 289 (1990) (noting an excess insurer "should not have to pay a[n excess] judgment if the primary insurer caused [it] by a bad faith failure to settle within [policy] limits").

¶9　　　At trial in this equitable subrogation case, Navigators relied on First Mercury's pretrial exposure analyses to show First Mercury understood the substantial risk of a verdict in excess of $3 million and as high as $4.2 million. Navigators argued in closing that a reasonable insurer would have settled for $1.5 million, paying a few hundred thousand dollars more than its internal estimates to avoid a loss of millions. That First Mercury did not, Navigators concluded, was a breach of its duty of good faith.

¶10　　　First Mercury countered its only duty was to the gym, its insured, and not Navigators, the excess insurer. The pretrial verdict analyses, according to First Mercury, proved it had thoroughly and properly investigated the Wileys' claims, thereby discharging its duty to the gym. Because its insured suffered no harm, First Mercury argued, Navigators had no claim.

¶11　　　The jury returned a unanimous $1 million verdict for Navigators and against First Mercury. After entry of final judgment awarding Navigators more than $266,000 in attorneys' fees and taxable costs, First Mercury timely appealed. This court has jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1) and -2101(A)(1) (2020).[1]

## DISCUSSION

¶12　　　First Mercury argues (1) Arizona law does not recognize Navigators' equitable subrogation claim, (2) the evidence did not support the jury's verdict, (3) the court erroneously rejected First Mercury's proposed jury instructions and (4) the court erroneously awarded Navigators its attorneys' fees.

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

I.      **Arizona Law Recognizes Navigators' Equitable Subrogation Claim.**

¶13      Judgment as a matter of law (JMOL) should be granted "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Roberson v. Wal-Mart Stores, Inc.*, 202 Ariz. 286, 290 ¶ 14 (App. 2002) (quoting *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990)); *accord* Ariz. R. Civ. P. 50. This court reviews the evidence and all reasonable inferences in the light most favorable to Navigators, the nonmoving party. *See Murcott v. Best Western Int'l, Inc.*, 198 Ariz. 349, 356 ¶ 36 (App. 2000). Whether equitable relief is available is a question of law reviewed de novo. *Andrews v. Blake*, 205 Ariz. 236, 240 ¶ 12 (2003) (citing cases). This court likewise reviews de novo the denial of a motion for JMOL. *ABCDW LLC v. Banning*, 241 Ariz. 427, 433 ¶ 16 (App. 2016).

¶14      First Mercury contends Navigators has no claim because the gym had no exposure. By ruling otherwise, First Mercury argues the superior court erroneously denied it JMOL. But to prevent an excess insurer from pursuing damages from the primary insurer because the insured is not personally liable would undercut the doctrine of equitable subrogation.

A.      **Navigators' Claim Is Supported by Arizona Precedent.**

¶15      This case is much like *Hartford v. Aetna*, where the Arizona Supreme Court first recognized an excess insurer's action for breach of good faith against a primary insurer whose settlement tactics led to an excess judgment. 164 Ariz. at 291. The insured in *Hartford*, who caused a car accident, had primary insurance through Aetna for $25,000 in damages and excess coverage from Hartford. *Id.* at 288. Like First Mercury, Aetna quickly determined its insured was at fault, leaving only the amount of damages to be determined. *See id.*

¶16      Despite conceding its insured's liability, Aetna, like First Mercury, was confident any potential exposure was well below its policy limits and therefore negotiated aggressively. *See id.* Several months into discovery, Aetna was advised of the possibility of a verdict well above its previous estimates, *id.*, just as First Mercury was here. But Aetna, like First Mercury, opted to proceed to trial rather than settle. *Id.* And as in this case, the eventual verdict far exceeded Aetna's policy limits, due largely to an adverse finding on lost future earnings. *Id.* Hartford assumed control of the

case following the verdict, settled it on appeal and sued Aetna for negotiating in bad faith soon after. *Id.* at 288–89.

**¶17** At the time, Arizona courts had not recognized equitable subrogation in this context and the superior court granted summary judgment for Aetna, which argued its duty of good faith did not extend to Hartford. *Id.* at 289. On appeal, the Arizona Supreme Court reversed, explicitly recognizing the applicability of equitable subrogation and overruling contrary precedent. *Id.* at 291. *Hartford* reasoned that equitable subrogation would protect the public and others from a primary insurer's disincentive to settle within policy limits where "an excess insurer is available to cover any amount over the primary insurer's liability limits." *Id.* at 290. This disincentive to settle, the court explained, would lead to inflated insurance premiums, increased litigation costs and an unfair distribution of losses among primary and excess insurers. *Id.* at 290–91.

**¶18** *Hartford* held that an excess insurer who pays an excess judgment caused by a primary insurer's "bad faith failure to settle within policy limits" of the primary insurer "is subrogated to the rights of the insured." *Id.* at 291. In that circumstance, *Hartford* found, the excess insurer may sue the primary insurer for breach of good faith — just as an insured without excess insurance could. *See id.*

**¶19** This case is controlled by *Hartford*. As the gym's excess insurer, Navigators had the right to step into the gym's shoes and hold First Mercury accountable for failing to negotiate in good faith. First Mercury's argument seeks to depart from *Hartford* by relieving primary insurers of their duty to settle cases that a reasonable insurer would settle, thereby shifting the risk of loss to excess insurers. *Hartford,* however, forbids that exact result. Accordingly, this court rejects First Mercury's argument that Navigators' claim is not cognizable under Arizona law.

### B. First Mercury's Counterarguments Are Inconsistent With Arizona Caselaw.

**¶20** First Mercury argues it cannot be liable to Navigators for negotiating in bad faith absent damages or financial risk to its insured. In doing so, First Mercury asserts an excess insurer's rights are no greater than the rights of its insured and a primary insurer owes no direct duty to an excess insurer. *See Twin City Fire Ins. Co. v. Bolton*, 164 Ariz. 295, 296 (1990). But *Bolton*, decided the same day as *Hartford*, rejected a direct duty because it recognized that equitable subrogation adequately protected the rights of excess insurers. 164 Ariz. at 296 ("We have decided this day, in *Hartford*,

that under the doctrine of equitable subrogation, *a primary insurance carrier owes an excess insurance carrier a duty of good faith and fair dealing* in accepting settlement offers within policy limits.") (emphasis added).

¶21        While First Mercury is correct that an excess insurer has no greater rights than its insured, it does not follow that an excess insurer cannot assert a bad faith claim against the primary insurer if the insured has no such claim. Nor does it follow that *all* defenses applicable against the insured are likewise applicable against the excess insurer. Indeed, *Bolton* suggests in dicta only that *wrongful* conduct on the part of the insured may be asserted as a defense against its excess insurer. *Id.* at 296–97. This view reflects Arizona's general approach to subrogation, under which "'payment to the insured by the insurer is no defense to the subrogation claim for the obvious reason that it is by the making of such payment that the insurer's right of subrogation arises.'" *PPG Indus., Inc. v. Cont'l Heller Corp.*, 124 Ariz. 216, 221 (App. 1979) (quoting *Highlands Ins. Co. v. Fischer*, 122 Ariz. 394, 396 (App. 1979)). *Bolton* does not hold that the *absence* of an insured's claim may be asserted as a defense against its excess insurer, as First Mercury suggests.

¶22        First Mercury also argues — without citation to authority — that "Arizona law does not allow an excess carrier to sit on the sidelines and then assert an unexpected jury verdict renders the primary insurance carrier liable for bad faith." Not so. Navigators had no duty "to evaluate [the] settlement offer, to participate in the defense, or to act *at all*" until First Mercury offered its policy limits, which never occurred. *See Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, 256 ¶ 18 (2003) (emphasis added).

¶23        As *Hartford* directs, First Mercury had a good faith duty to give equal consideration to the interests of its insured, 164 Ariz. at 289, and, by proxy, Navigators, *see id.* at 291. "Equal consideration" turns on whether First Mercury would have settled for $1.5 million if it was responsible for losses beyond its $2 million policy limit. *See Gen. Accident Fire & Life Assurance Corp. v. Little*, 103 Ariz. 435, 442 (1968) (a primary insurer must evaluate a claim "as though it alone would be responsible for the payment of any judgment rendered"). The excess judgment in the personal injury case allowed Navigators, through equitable subrogation, to assert the bad faith claim that the insured (the gym) could have asserted had Navigators not covered the excess verdict. First Mercury's argument to the contrary would nullify the doctrines, recognized by the Arizona Supreme Court, under which it has been found liable. Accordingly, the superior court did not err in denying First Mercury's motion for JMOL.

## II.     The Evidence Was Sufficient to Support the Jury's Verdict.

**¶24**         First Mercury argues the evidence did not support the jury's verdict, meaning the court should have granted its motion for JMOL on this independent ground. In considering whether sufficient proof supports the jury's verdict, this court views the evidence "in the light most favorable to upholding" the verdict. *Powers v. Taser Int'l, Inc.*, 217 Ariz. 398, 399 ¶ 4 n.1 (App. 2007) (citing *Larsen v. Nissan Motor Corp.*, 194 Ariz. 142, 144 ¶ 2 (App. 1998)).

**¶25**         It was not unreasonable for the jury to conclude First Mercury failed to act as a prudent insurer by refusing multiple opportunities to settle, for amounts well within policy limits, given its awareness of the risk of a verdict well above its policy limits. In Arizona, a primary insurer is liable for breaching its duty to settle in good faith if the finder of fact can determine that (1) "a prudent insurer without policy limits would have accepted the settlement offer" (the *Clearwater* test) and (2) "either knew or was conscious of the fact that its conduct was unreasonable" (the *Burke* test). *Clearwater v. State Farm Mut. Auto. Ins. Co.*, 164 Ariz. 256, 260 (1990) (citation omitted); *Burke*, 204 Ariz. at 255 ¶ 17 (citation omitted); *accord Hartford*, 164 Ariz. at 291, 294; *Bolton*, 164 Ariz. at 296. This "conscious negligence" standard turns on the consideration of eight non-exclusive factors (the *Clearwater* factors). *Clearwater*, 164 Ariz. at 260; *accord id.* at 259. The *Clearwater* factors provide that a jury should "measure" — among other things — "the extent of the insurer's consideration of . . . the strength of the third party's claim" and "the amount of financial risk to which each party is exposed in the event of a refusal to settle." *Id.* at 259, 260.[2] If this fact-intensive inquiry leads the jury to conclude that the defendant knew it should have settled the case, then a verdict for the plaintiff is proper. *Accord Clearwater*, 164 Ariz. at 260; *Burke*, 204 Ariz. at 255 ¶ 17.

**¶26**         Here, the evidence presented at trial was sufficient to sustain the jury's verdict that First Mercury strayed from its duty to negotiate as a prudent insurer would by rejecting the Wileys' $1.5 million demand. Joyce Poff, First Mercury's claims adjuster in the personal injury case, testified about her liability concerns given the gym had not followed the

---

[2] First Mercury argues an insurer who has undervalued a claim because of an honest mistake necessarily cannot be liable for breaching its duty to settle in good faith. *See Glendale v. Farmers Ins. Exch.*, 126 Ariz. 118, 120–21 (1980); *Rawlings v. Apodaca*, 151 Ariz. 149, 157 (1986). But the jury's verdict contradicts the thought that First Mercury's conduct was no more than an honest mistake.

manufacturer's maintenance guidelines and had lost a crucial piece of evidence. First Mercury's final pretrial report, which was admitted into evidence, predicted the Wileys would submit evidence of damages that greatly exceeded the primary policy limits. That report also estimated a 20% chance of a $2–$3 million verdict and a worst-case verdict of $4.2 million. Poff also testified that, despite its pretrial estimates and its $2 million in coverage, First Mercury rejected multiple opportunities to settle for $1.5 million, secured $1.25 million in settlement authority and refused to offer more than $1.1 million to settle. On these facts, a jury could conclude First Mercury knew its settlement approach was contrary to the actions of a prudent insurer without policy limits. *See Clearwater*, 164 Ariz. at 260.

¶27 First Mercury contends the evidence could not support the verdict because Navigators only submitted evidence of two of the eight *Clearwater* factors and, even then, there was insufficient evidence for an adverse finding on either of those factors. The eight *Clearwater* factors, however, are not elements to be shown in every case, but are non-exclusive factors that guide a jury's deliberations. *See Clearwater*, 164 Ariz. at 259 (suggesting jury may consider "*any other* factors tending to negate or establish bad faith" besides the eight *Clearwater* factors) (emphasis added); *see also Little*, 103 Ariz. at 443 (evidence attempting to rebut factors which a plaintiff neither raised nor challenged is "irrelevant to the issue of bad faith"). Moreover, the jury could have reasonably found First Mercury did not adequately account for the strength of the Wileys' case or the financial risk to which it would expose Navigators if settlement was not reached, and thus it knew it was not acting as a prudent insurer would.

¶28 First Mercury has not shown the jury could not have reasonably returned the verdict it did on the evidence admitted at trial. Stated differently, First Mercury has not shown the trial evidence — viewed in the light most favorable to sustaining the verdict — could not establish First Mercury's bad faith. Accordingly, because the claim was properly submitted to the jury and the verdict was supported by the trial evidence, the court properly denied First Mercury's motion for JMOL.

## III. The Court Properly Rejected First Mercury's Proposed Jury Instructions.

¶29 First Mercury unsuccessfully proposed several jury instructions it claims were necessary for the jury to understand the law. First Mercury claims the superior court's rejection of these instructions was reversible error. Presuming the issues were properly preserved for appeal, First Mercury has shown no reversible error.

¶30 General objections do not preserve a matter for appeal. *See Czarnecki v. Volkswagen of Am.*, 172 Ariz. 408, 417 (App. 1991). An objection on the ground that a proposed jury instruction states or does not state the law is a general objection. *Spillios v. Green*, 137 Ariz. 443, 446–47 (App. 1983). First Mercury raises general objections, insisting its proposed jury instructions were "relevant," and "correct reflection[s] of the State of Arizona law" that "would be instructive for the jury" during its deliberations. The record does not reflect any rationale for the proposed instructions beyond First Mercury's claim that each was a relevant and correct statement of Arizona law. It is not enough for First Mercury to maintain "the trial judge knew why [First Mercury] was requesting the instructions and never inquired for more clarification." *Accord Spillios*, 137 Ariz. at 446.

¶31 Presuming the objections were preserved for appeal, the court's refusal to give First Mercury's requested instructions is reviewed for abuse of discretion. *See Dupray v. JAI Dining Servs. (Phx.), Inc.*, 245 Ariz. 578, 585 ¶ 22 (App. 2018). "[A]n abuse of discretion 'is discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 83 ¶ 19 (App. 2005) (quoting *Quigley v. Tucson City Ct.*, 132 Ariz. 35, 37 (1982)).

¶32 Here, the court properly instructed the jury on the *Clearwater* test, the *Clearwater* factors, the nature of equitable subrogation, and Navigators' burdens of proof and persuasion. First Mercury proposed four more instructions: (1) that the jury could not evaluate First Mercury's conduct with knowledge of the eventual verdict, (2) that a primary insurer has no absolute duty to accept settlement offers within its policy limits, (3) that a primary insurer cannot be held liable for a good faith mistake in performance or judgment if "it acts honestly, on adequate information and does not place greater importance on its own interests . . . ." and (4) that a primary insurer owes no direct duty to an excess insurer.

¶33 The court did not err in rejecting each of these proposed instructions. The first was unnecessary, as the court's instructions on the *Clearwater* test and factors directed the jury to consider only what a primary insurer knew and how it acted before and during settlement negotiations, not after the eventual verdict. Both the second and fourth were irrelevant, as Navigators never argued First Mercury had an absolute duty to accept the Wileys' demands or that First Mercury owed Navigators a direct duty. *See Little*, 103 Ariz. at 443. Finally, the third assumed the truth of the dispute at the core of the case: that First Mercury's settlement tactics were in fact conducted in good faith.

¶34 Because the jury instructions given, viewed in their entirety, adequately set forth the applicable law and provided the jury with the correct rules for reaching its decision, *see State v. Rosas-Hernandez*, 202 Ariz. 212, 220 ¶ 31 (App. 2002); *Lifeflite Med. Air Transp., Inc. v. Native Am. Air Servs., Inc.*, 198 Ariz. 149, 151 ¶ 8 (App. 2000), the court did not abuse its discretion in rejecting First Mercury's proposed instructions.

## IV. The Court Properly Awarded Navigators Attorneys' Fees.

¶35 First Mercury argues the superior court erred by misapplying the factors it relied on to award Navigators more than $266,000 in attorneys' fees. In an action arising out of contract, a superior court may award the successful party reasonable attorneys' fees, A.R.S. § 12-341.01(A), to "mitigate the burden of the expense of litigation to establish a just claim or a just defense," A.R.S. § 12-341.01(B). A court has broad discretion in making a fee award; if there is "any reasonable basis" for its decision, the award will be affirmed. *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570–71 (1985).

¶36 There are several factors that may be useful in determining whether to award attorneys' fees: (1) whether the unsuccessful party presented a meritorious claim or defense, (2) whether the litigation could have been avoided or settled, and whether the successful party's efforts would have been superfluous if it had, (3) whether assessing fees against the unsuccessful party would cause an extreme hardship, (4) whether the successful party recovered all of the relief sought, (5) whether the legal question presented was novel, (6) whether the claim or defense had previously been adjudicated in Arizona, and (7) whether a fee award would discourage other parties with tenable claims or defenses from litigating legitimate contract issues. *Warner*, 143 Ariz. at 570.

¶37 Here, the court awarded Navigators its requested attorneys' fees after determining each of these factors weighed in Navigators' favor. First Mercury challenges the court's conclusions on factors 1 and 5, as well as the award of fees Navigators incurred while settling the Wiley lawsuit. But the court's characterization of First Mercury's defense as without merit or novelty did not "exceed[] the bounds of reason." *Warner*, 143 Ariz. at 571. Nor was it unreasonable for the court to award Navigators the fees it incurred for settling the Wiley lawsuit. Although First Mercury disagrees with the fee award, it has not shown the award was error.

## V.        Attorneys' Fees and Costs on Appeal.

¶38        Both First Mercury and Navigators seek an award of attorneys' fees and taxable costs on appeal pursuant to A.R.S. § 12-341.01. Because it is not the successful party on appeal, First Mercury's request is denied. Because it is the successful party on appeal, Navigators is awarded its taxable costs on appeal and, in the court's discretion, its reasonable attorneys' fees on appeal, contingent upon its compliance with Arizona Rules of Civil Appellate Procedure 21.

## CONCLUSION

¶39        The judgment is affirmed.

